*In re* Estate of George C. Benton, Deceased.

*Opinion filed April 23, 1908—Rehearing denied June 9, 1908.*

1. Inheritance tax—*when a gift is made in contemplation of death.* A gift of property made by the donor for the purpose of so reducing his estate that the widow would not be likely to elect to take one-third of such estate in lieu of the provision made for her in the donor's will, the object being to prevent the widow's son by a former husband from inheriting the property through his mother if she elected to take under the statute, is made in contemplation of death, within the meaning of the Inheritance Tax law.

2. Same—*gift made "in contemplation of death" not restricted to a gift causa mortis.* A gift made "in contemplation of death," as expressed in the Inheritance Tax law, is not restricted to a gift *causa mortis,* but includes gifts *inter vivos* if they are made when the donor is looking forward to his death as impending and in view of that event, for the purpose of placing his estate, or some part thereof, in the hands of the persons whom he desires to enjoy it after his death.

Appeal from the County Court of Cook county; the Hon. Lewis Rinaker, Judge, presiding.

John F. Holland, and William Sanders Elliott, for appellant.

William H. Stead, Attorney General, and Percy V. Castle, (Walter K. Lincoln, of counsel,) for appellee.

Mr. Justice Vickers delivered the opinion of the court:

This is an appeal from the judgment of the county court of Cook county imposing a tax of $800, under the Inheritance Tax law, upon a gift of one thousand shares of stock, of the par value of $100 each, of the Delta and Pine Land Company, a corporation organized under the laws of the State of Mississippi. The gift was made by George C. Benton to Charles W. Ward, as trustee, for the use and benefit of Harriot Stevens Ward, a daughter of Charles W. Ward and a grand-daughter of the donor. The stock was trans-

ferred on the books of the corporation at Jackson, Miss., on the 20th day of June, 1902, and the certificates of stock were received by the trustee in Chicago on or about the 22d day of June.

George C. Benton died testate at his home in the city of Chicago on July 26, 1902, at the age of seventy-five years. He left surviving him, Susan D. Benton, his widow, and his grand-daughter, Harriot Stevens Ward, as his only heirs. The evidence shows that George C. Benton was the owner of a large estate. In February, 1902, he conveyed a flat-building on Fifty-fifth street, in Chicago, to George P. Benton, his nephew. This conveyance seems to have been a gift. In March, 1902, the decedent gave his brother, Henry Benton, of New York, nine hundred and fifty shares of stock in the Delta and Pine Land Company. George C. Benton's health had been declining for some months before his death. He was suffering from Bright's disease of the kidneys and hardening of the arteries. Dr. Charles Ward, a son-in-law of decedent and appellant in this case, was the physician in charge of George C. Benton's case. The evidence shows that the decedent was able to be out of the house and to attend to a portion of his business during the spring and early summer before his death. On June 14 Dr. Frank S. Johnson was called in consultation with Dr. Ward and made an examination of the decedent. He testifies that Benton had Bright's disease and hardening of the arteries, and that the patient was very much enfeebled, and was having some bladder trouble and dropsy of the foot. Dr. Johnson next saw the decedent on June 23. At this visit he discovered, in addition to the ailments above mentioned, that the patient had an enlarged heart. An examination of the urine disclosed degeneration of the kidneys. The physician testifies that he saw the patient again on the 25th of June, and again on July 3, 8, 15 and 21. The condition of the decedent grew rapidly worse. On July 14 it was discovered that the deceased was suffering from a de-

terioration of the blood vessels; that there was an enlargement of the aorta, which is called aneurism. On the 26th day of July the deceased died from a rupture of the enlarged aorta, produced by vomiting. On July 25 the decedent made a will, in which he disposed of the remainder of his estate. The evidence does not affirmatively show that the physicians informed the decedent of the seriousness of his condition.

The evidence shows that George C. Benton for some reason was unwilling that any part of his estate should fall into the hands of a step-son. As early as April 19, 1902, he wrote his brother, in New York, asking him if he would accept one thousand shares of stock, worth $100,000. In this letter he says: "The laws of Illinois give to the wife who outlives her husband one-third of the personal property. This she may elect to take instead of taking what the will provides. I have made abundant provision for her so long as she lives, but she might be influenced to reject that and take her one-third of all personal property, and thus it would fall into Clarence's hands. This I do not want done but rather go some other way. I have no heirs but Harriot and my nephews and nieces. If I thought my wife may outlive me, and to guard against any emergency I have thought to make a distribution now, or to put into your hands for distribution in case of my death before my wife, one thousand shares of my Delta and Pine Land stock." He requests his brother in this letter to give him a power of attorney to enable him to collect the dividends as long as he lives. The letter also contains this statement: "If I outlive her it may be returned to me, or not, as you think best." The letter concludes as follows: "This is done as a precautionary measure. Will you accept the stock and trust? I feel it dangerous to remain as it is. Not a soul but yourself to know of the contents of this letter." On June 19 the deceased wrote his brother enclosing nine hundred and fifty shares of stock in the Delta and Pine Land Company, in-

forming him that he only desired to have the dividends as long as he lived, in case he required them, and suggesting that he would like to have his brother distribute two hundred shares of the stock to each of his (the brother's) children and one hundred and fifty shares, each, to George P. Benton and Harriot Stevens Ward, the other fifty to be retained by H. F. Benton. The latter received this stock and executed an order authorizing the payment of all dividends thereon to the donor, George C. Benton.

Appellant contends that the evidence shows that the gift of $100,000 in stock to Harriot Stevens Ward was an absolute gift *inter vivos,* and that the statute relating to a tax on gifts, legacies and inheritances cannot be construed to apply to such a gift, and that to do so would render the statute unconstitutional. The statute imposes a tax upon property which shall pass by will or by the intestate laws of this State, or "which shall be transferred by deed, grant, sale or gift made in contemplation of the death of grantor or bargainor or intended to take effect in possession of or enjoyment after such death."

The first case to come before this court under the Inheritance Tax law of 1895 is *Kochersperger* v. *Drake,* 167 Ill. 122, and the constitutionality of the law was sustained upon the ground that, the right to take property by descent and devise being purely statutory, the legislature may impose such conditions as it sees fit in the granting of such rights; that inheritance taxes being conditions or burdens imposed by the legislature upon the right of succession to the ownership of property through the operation of such laws relating to descent and devise as the legislature had seen proper, in its discretion, to pass, were not taxes upon property within the meaning of the constitution; that the law did not, therefore, violate the constitutional provision requiring every person to pay a tax in proportion to the value of his property, and was not inconsistent with the rule that taxation laws must be uniform as to the class upon which

234—24

they operate. This decision has been re-affirmed by this court in *Merrifield* v. *People,* 212 Ill. 400, and the statute has been sustained by the Supreme Court of the United States. *Magoun* v. *Illinois Trust and Savings Bank,* 170 U. S. 283.

Appellant's argument is mainly devoted to the question of the constitutionality of the statute as applied to gifts *inter vivos.* His contention is, that the reasoning by which the conclusion that the law is constitutional is reached cannot be applied to gifts *inter vivos.* Conceding the plausibility and force of appellant's argument, we cannot assent to his conclusion. The contention that a gift made "in contemplation of death" should be construed as equivalent to a gift *causa mortis* is, we think, more plausible than sound. This court gave a construction to this clause in the statute in *Rosenthal* v. *People,* 211 Ill. 306, as follows: "A gift is made in contemplation of an event when it is made in expectation of that event and having it in view, and a gift made when the donor is looking forward to his death as impending and in view of that event is within the language of the statute." In *People* v. *Kelley,* 218 Ill. 509, this court held that the question whether a gift was made in contemplation of death was one of fact.

Under the law as established by the foregoing decisions, the question at issue is whether the gift was made in expectation of death, and a purpose on the part of the donor to place his estate, or some part thereof, in the hands of those whom he desired to enjoy it after his death. By reference to the letter of George C. Benton written to his brother on April 19, it will be seen the reasons actuating the donor in placing nine hundred and fifty shares of this stock in the hands of his brother are clearly set`forth. In this letter the decedent takes his brother into his close confidence and tells him his secret thoughts and wishes. From this letter we get the fact that in no event was it the wish or desire of the decedent that the step-son should have any part

of his estate. He knew what the law is in respect to the right of a surviving wife to renounce the provisions made for her in the will and take one-third of the personal property under the statute. One-third of this estate would be a large sum of money, which the widow might take. This property would become hers absolutely. Upon her death it would then pass to her son, Clarence. This course George C. Benton desired to avoid. The method adopted by him to defeat the possibility of the step-son's obtaining any portion of his estate was to so reduce the estate by voluntary gifts to such of his relatives as he desired to have his property, as that the provision made for the widow would largely exceed one-third of the estate of which he died seized, thereby compelling the widow, from considerations of self-interest, to accept the provisions made for her during her life, under the will. If this was the purpose of the donor when he wrote the letter of April 19, we may well believe that the same purpose continued and controlled his action in making the gift in question. In fact, the evidence shows that the gift to his brother was not finally consummated until June 19,—only one day before the gift of the one thousand shares of stock to Harriot Stevens Ward.

It thus appears from the evidence that the donor disposed of a flat-building on Fifty-fifth street, in the city of Chicago, the value of which is not disclosed, by gift. It also appears that he disposed of substantially $200,000 of valuable stock in the same way soon afterwards, and that at the time at which these gifts were being made the donor was an old man, suffering from an incurable disease. After having given his property to his relatives, as above stated, he then made a will making suitable provisions for his wife during her lifetime. By means of these several transactions the owner of this estate made a final distribution thereof in contemplation of death.

In our opinion the gift to Harriot Stevens Ward is within the statute providing for a tax upon gifts made in con-

templation of death. There was, therefore, no error in the judgment of the county court holding this estate liable for the tax.

The judgment of the county court of Cook county is affirmed.

*Judgment affirmed.*