## Matter of the Estate of FRANK G. WADSWORTH, Deceased.

(Surrogate's Court, Oneida County, June, 1917.)

Transfer tax — gifts — deeds — wills — contracts — devise — valuable consideration — Tax Law, § 220(4).

A transfer tax being upon the right of succession, a gift other than by will is not subject to such a tax, unless it comes within the meaning and intendment of section 220(4) of the Tax Law.

The word " deed " as used in section 220(4) of the Tax Law has no reference to a conveyance of property made in the ordinary course of business for a valuable consideration, but is limited to conveyances intended as gifts.

Where testator, who had been divorced, conveyed certain real estate to a woman to whom he had devised and bequeathed all the rest, residue and remainder of his estate, both real and personal, in furtherance of an ante-nuptial agreement in which there was a mutual conditional covenant of marriage and an independent covenant on her part to care for and support him during his life and see that he received proper care, and it appears that she fully performed such agreement on her part until his death and that in the deed of conveyance no reference was made to the special provisions of the ante-nuptial agreement, it must be *held* that the property passing by the deed was not transferred as a gift to the grantee in contemplation of death but that it was conveyed for a valuable consideration and was not subject to a transfer tax.

Surrogate's Court, Oneida County, June, 1917.   [Vol. 100.

Appeal from order assessing a transfer tax.

Geo. E. Dennison, for executors.

W. A. Matteson, for E. Elizabeth Hinchcliff.

David B. Lisle, for State Comptroller.

Sexton, S.   An order was entered on the 9th day of January, 1917, by the surrogate of Oneida county, assessing a transfer tax of $427.48, upon the report of the transfer tax appraiser against E. Elizabeth Hinchcliff, from which order this appeal is taken.

On the 30th day of December, 1912, the decedent made his will which contained this paragraph: "All the rest, residue and remainder of my property, both real and personal, I give, devise and bequeath unto E. Elizabeth Hinchcliff, of 13 Andes Avenue, Utica, New York, for her sole use and benefit."

On the 22d day of March, 1913, the said decedent and E. Elizabeth Hinchcliff entered into a contract in writing as follows:

"Agreement made this 22nd day of March, 1913, by and between Frank G. Wadsworth of the city of Utica, N. Y., and E. Elizabeth Hinchcliff of the same place. Whereas, the said Frank G. Wadsworth has for some time been in need of the care and attention of some competent person and the said E. Elizabeth Hinchcliff has at his request taken charge of the household of the said Wadsworth and is looking after the same, as well as seeing that said Wadsworth receives proper care and attention, and, whereas, the said Frank G. Wadsworth and E. Elizabeth Hinchcliff have heretofore agreed to and between each other that as soon as they had the legal right to so do, that they, the said Frank G. Wadsworth and the said E. Elizabeth Hinchcliff, would marry each other,

"*Now, therefore,* this agreement witnesseth: That the said Frank G. Wadsworth, for the purpose of compensating the said E. Elizabeth Hinchcliff for care and attention to him and his household, hereby agrees to and does hereby convey unto the said E. Elizabeth Hinchcliff certain real estate owned by him and situated on Seymour and Dudley avenues in the city of Utica, including the personal property in the house 381 Seymour avenue, and the said E. Elizabeth Hinchcliff on her part agrees to and with the said Wadsworth that during his said life that she will care for and support said Wadsworth and see that he receives proper care and will, as soon as said Wadsworth is able to, marry the said Wadsworth.

"F. G. WADSWORTH,
"E. ELIZABETH HINCHCLIFF.

" Witness:
"GEO. E. DENNISON."

On the same day and after the execution of said contract it appears that said deceased conveyed to said E. Elizabeth Hinchcliff, in consideration of one dollar, the property referred to in said contract.

From the record it appears that Miss Hinchcliff was willed the same property conveyed to her by said deed.

The position of the transfer tax appraiser was that the entire transaction, will, contract and deed constituted a gift of said real property and was made in contemplation of death.

This conclusion was influenced by evidence showing that deceased had been in an automobile accident and was surgically operated on in January, 1912. His attorney testified that at the time of the execution of the will, December 30, 1912, Wadsworth was sick and had been ill for several months and that the doctors did not seem to know just how long he would live. He

went out of the house for a month after the execution of the will before he was confined. His age was about forty-seven. He had been married, recently divorced and died childless. For years he was a Century Dictionary sales agent. A trained nurse took care of deceased for about two months before his death. In February or March preceding his death, decedent told witness Philo that he was suffering from sarcoma and that he " didn't know whether he would get better; he didn't think he would get out of it. He thought it was working up towards his vitals." He died April tenth of the same year.

These facts certainly warranted a rigid inquiry into the circumstances surrounding the transfer in question on the part of the appraiser.

Do they establish a gift in contemplation of death?

The state has the burden of proving that property is subject to the transfer tax. *Matter of Enston,* 113 N. Y. 174.

" The right to impose the tax must rest upon evidence sufficient in probative force to bring it within the statute, and must establish a case from which the law clearly authorized its imposition." *Matter of Thorne,* 44 App. Div. 10.

The rule laid down in *Matter of Vassar,* 127 N. Y. 1, is " That special tax laws are to be construed strictly against the government and favorable to the taxpayer, that a citizen can not be subjected to special burdens without clear warrant of law."

A gift, other than by will, is not subject to the tax unless it comes within the meaning and intendment of subdivision 4 of section 220, which provides that a tax shall be imposed — " When the transfer is of intangible property, or of tangible property within the state, made by a resident, or of tangible property within the state made by a nonresident, by deed,

grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor or intended to take effect in possession or enjoyment at or after such death."

It must be that the statute was intended to reach only voluntary gifts or transfers made without consideration, for the tax is not upon the property involved in the transaction, but upon the right of succession. *Matter of Dows,* 167 N. Y. 227.

In *Magoun* v. *Illinois Trust & Sav. Bank,* 170 U. S. 283, the court said: "An inheritance tax is not one on property, but one on the succession."

In the *Wadsworth* case under consideration a deed was given pursuant to a written agreement and in partial fulfillment thereof. The word " deed " as used in section 220, subdivision 4, of the Transfer Tax Law has no reference to a conveyance of property by such an instrument made in the ordinary course of business for a valuable consideration, but is limited to conveyances intended as gifts. *Matter of Birdsall,* 22 Misc. Rep. 180; affd., 43 App. Div. 624.

If a man who knew that he had but an hour of life left should transfer valuable real estate by deed and receive full value therefor, it would not seriously be contended that the property so sold would be subject to a transfer tax, notwithstanding that the conveyance was made in contemplation of death. *Matter of Spaulding,* 49 App. Div. 541; affd., 163 N. Y. 607. It therefore follows that the time of Wadsworth's death is wholly immaterial provided that he transferred his real estate in question for a valuable consideration.

The deed to Miss Hinchcliff was given in furtherance of an ante-nuptial agreement and conveyed property valued at about $10,000. In said agreement there was a mutual conditional covenant of marriage; also on the part of Miss Hinchcliff, there was an independ-

ent agreement by which she obligated herself to Wadsworth " That during his said life that she will care for and support said Wadsworth and see that he receives proper care."

Because Wadsworth had been divorced under the laws of this state for principal cause, to the knowledge of Miss Hinchcliff, it does not follow that her agreement to marry him fails as a valuable consideration, for the reason that section 8 of the Domestic Relations Law provides a sure way for the removal of the statutory obstacle at the end of five years from the rendition of the decree of divorce.

" Marriage in contemplation of law is not only a valuable consideration for a contract or conveyance between the parties to it, but is a consideration of the highest value, and upon motives of soundest public policy is upheld with a strong resolution.   *   *   *
It is upon this principle that antenuptial settlements are upheld."   6 Am. & Eng. Ency. of Law (2d ed.), 724.

The consideration for the deed is not the actual consummation of the marriage, but the agreement to marry.  *Prignon* v. *Daussat,* 4 Wash. 199.

Marriage is regarded in law as the highest and most valuable of considerations, and the grantee, when free from fraud, is in as secure a position as though she had paid in money the full value of the property.  2 Devlin Real Estate (3d ed.), 1461.  And this is true even though the consummation of the marriage is prevented by the death of the grantor.  *Smith* v. *Allen,* 5 Allen, 545.

A parol promise to marry is binding in law and for a breach thereof an action will lie.  It appears from the record and the ante-nuptial agreement under consideration, that a parol agreement to marry existed between the parties at the time the agreement was

signed and deed given. The question therefore arises whether, under the peculiar facts of this case and the recitals in the agreement, the written promise to marry in the agreement, which is only a repetition of the oral agreement to marry, constitutes a valuable consideration.

This feature of the contract will not be considered because, independent of the promise to marry, the grantee assumed other obligations which constitute a valuable consideration for the transfer of the property in question, in pursuance of the agreement. A reference to the contract will show that the grantee assumed the care and support of the grantor during the period of his natural life. A covenant to render personal services to the grantor is a valuable consideration, and is sufficient to support a deed of bargain and sale. 2 Devlin Real Estate (3d ed.), 1416.

Support of the grantor by the grantee, it must be said, is now regarded in nearly every jurisdiction as a sufficient consideration for a deed. The grantee by accepting the deed and entering into possession under it, as in the case at bar, becomes bound by the agreement providing for the support of the grantor, and the provision for support thus becomes equivalent to a life annuity. 2 Devlin Real Estate (3d ed.), 1455.

The evidence shows that Miss Hinchcliff, the grantee, fully performed every requirement of the ante-nuptial contract and continued to perform all of her obligations thereunder until the death of the grantor, so that upon his death her title became absolute and free from the burden of further supporting him, hence no right of action of any kind survived to his heirs.

The deed between the aforesaid parties contained none of the special provisions of the contract, and made no reference to them. It was absolute upon its

face and free from the taint of duress or fraud, hence unqualifiedly and unreservedly passed the fee from the grantor to the grantee, and was given in partial fulfillment of the covenants in the ante-nuptial agreement.

The grantee immediately took possession of the property described in said deed, collected the rents, paid the taxes and assumed full dominion over it. She, with her father and mother, entered the home of the grantor, assumed charge of it, ordered the provisions, paid for them, and looked after the grantor and for him maintained an orderly and comfortable home in one of the houses conveyed by the deed, and in which he had lived for years.

In *Matter of de Escoriaza,* 87 Misc. Rep. 515, Surrogate Fowler held: That where a deed recites a consideration of " $1.00 and other good and valuable consideration," the burden was on the state comptroller to establish that the transfer was a gift made in contemplation of death, or intended to take effect in possession or enjoyment at or after death.

In *Matter of Polhemus,* 84 Misc. Rep. 332, it was held that the mere fact that the transfer was made shortly before death to a daughter of decedent does not overcome the presumption raised by the recital in the deed.

The contract in question was not recorded, the deed was, and it being absolute upon its face, free from special covenants and conditions, the grantee could have sold the property described therein to any one at any time after the delivery of the deed to her, and would have been capable of passing absolute title to the property therein described.

I hold and decide that the property in question was not transferred as a gift to the grantee by the grantor in contemplation of death, but was conveyed for a

valuable consideration, and therefore is not subject to the operation of the Transfer Tax Law.

The order made by this court on January 9, 1917, fixing a transfer tax of $427.48 herein, is hereby vacated and set aside.

Order vacated and set aside.