Surrogate's Court, Westchester County, September, 1919. [Vol. 108.

Matter of the Judicial Settlement of the Account of Proceedings of HAMILTON FISH KEAN and JAMES B. LUDLOW, as Temporary Administrators of the Goods, Chattels and Credits of ROBERT B. VAN CORTLANDT, Deceased.

Matter of the Judicial Settlement of the Account of Proceedings of HAMILTON FISH KEAN and JAMES B. LUDLOW, as Executors of the Last Will and Testament of ROBERT B. VAN CORTLANDT, Deceased.

(Surrogate's Court, Westchester County, September, 1919.)

Transfer tax — what subject to — Virginia debt certificates in nature of lottery tickets are not subject to — taxes — classification of property known as "investments" — wills — Tax Law, § 221-b.

    A certain portion of an entire estate bequeathed to a college, falling within the classification of property known as "investments" under the statute (Laws of 1917, chap. 700) and which was not assessed by the local authorities in the lifetime of decedent, and upon which the decedent had not paid the investment tax, is taxable under section 221-b of the Tax Law.

    Certain Virginia debt certificates in the nature of lottery tickets, passing under the will of decedent, not being subject to the personal property tax or to the stamp tax during the lifetime of the decedent, are not subject to a transfer tax under said section 221-b of the Tax Law.

PROCEEDINGS upon the judicial settlement of the accounts of temporary administrators and of executors.

Crescens Hubbard, for executors.

John B. Pine, for Columbia University.

Francis A. Winslow, for state comptroller.

SLATER, S. The questions submitted to the court for disposition in this matter are two in number, and both relate to the construction of section 221-b of the Transfer Tax Law read in connection with the Investment Tax Law. The entire estate of the decedent passes under his will to the "Trustees of Columbia University in the City of New York," an educational institution. A portion of the property so bequeathed falls within the classification of property known as " investments " under the Investment Tax Act, chapter 700 of the Laws of 1917. It is claimed by the trustees of Columbia University that title to those investment securities is taken under the will of decedent exempt from the tax created by the Investment Tax Law and by section 221-b of the Transfer Tax Law. On the part of the state comptroller it is claimed that notwithstanding the fact that this estate is exempt from the payment of the transfer tax under sections 221 and 221-a of the Tax Law, the original transfer tax law, the investments are nevertheless subject to the payment of the tax imposed by section 221-b of article 10 of the Tax Law.

Under the power of taxation for the general support of government the nation has from time to time imposed certain kinds of taxes as sources of revenue, while the several states under the reserve power mentioned in the Federal Constitution have imposed and collected certain other kinds of taxes as their sources of revenue. It has been said that: " taxation is the science of government." The laws of exemptions, however, sin against the cardinal rules of uniformity, of equality and universality of government. Beginning with our state government the policy was started to have the state recognize the value of the churches and the charitable, benevolent, educational and other eleemosynary corporations to society by

permitting them to enjoy real estate exempt from the burdens of taxation. The state fully appreciates the need of their existence, the necessity of the assistance granted by the state and the value of their work in relieving the state from performing the entire work. The dual system that has been erected has been permitted to enlarge until, so far as land is concerned, in 1896 the law was generously amended so as to include the very numerous present exempt classes. From time to time, as new tax measures have been created and written into the system of taxation of the state, exemptions have been made to cover these same exempt classes. Many persons are now claiming that the time has arrived when a curtailment of tax exemptions should be made as a state policy, if not in whole, at least in part, by permitting the local authorities to consent to the grant of land tax exemptions, an exemplification of the home rule principle.

The special tax laws relating to the taking of property for the support of government are always construed strictly against the government (*Matter of Wadsworth*, 100 Misc. Rep. 439) and the state has the burden of proving that property is subject to a tax. *Matter of Enston*, 113 N. Y. 174. Statutes exempting property from the general scheme of taxation and support of state government are always strictly construed against the property owner. *People ex rel. New York Lodge No. 1* v. *Purdy*, 179 App. Div. 805. Section 3 of the Tax Law states the general taxing principle and provides that all real property and all personal property situated or owned within this state is taxable, unless exempt from taxation by law—and section 39 of the General Construction Law defines the term personal property as everything except real property, which may be the subject of ownership.

Some thirty-five years ago a situation confronted

the legislature. It was said that certain classes of taxpayers were paying an improper and excessive portion of the general taxes; that many persons who should pay taxes were shirkers. It was desirable to distribute this burden in a just and equitable manner. The original collateral inheritance tax act was chapter 483 of the Laws of 1885. It was amended by chapter 399 of the laws of 1892 to deal with direct inheritances as to personalty. The transfer of real estate at death was first taxed by chapter 41 of the Laws of 1903.

By chapter 62 of the Laws of 1909 the legislature codified the amendments to the original act and it is the present Transfer Tax Law, with subsequent amendments. The distinction between tangibles and intangibles was introduced into the law by chapter 732 of the Laws of 1911 and prior thereto by chapter 706 of the Laws of 1910 the graded rates are found for the first time in the law. The lien of this new and peculiar tax took place at the time of death and the transfer of the property to the devisee or legatee. It was a tax levied upon the right to receive the property. Inheritance tax is not one on property but one on the succession. *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283; *Matter of Dows,* 167 N. Y. 227. Section 221 of said act relates to exemptions and limitations in favor of corporations exempted under the Tax Law relating to real estate and to certain near relatives of decedent. Thus the statute as it stood in 1917 was a gradual development of a scheme of inheritance taxation, with certain limitations. By chapter 712 of the Laws of 1899 the legislature created a new form of taxation of all special franchises, a tax upon a corporation's right to live and do business by the exercise of the corporate powers granted by the state. *People ex rel. Metropolitan St. R. Co.* v. *Tax Commissioners,* 174 N. Y. 417.

Surrogate's Court, Westchester County, September, 1919. [Vol. 108.

The growth of the annual expenditures, the increased debt of the state of New York and the apparent loss of revenue from the excise laws made it incumbent upon the legislature in very recent years to look for new sources of taxation for the support of state government. It is generally known that many people owning personal property taxable by the locality have escaped taxation upon their property. These facts were before the legislature in 1917 when it enacted chapter 700 of the Laws of 1917, and in which it engrafted section 221-b upon the Transfer Tax Law, creating the Investment Tax Law. This act took the place of the Secured Debt Tax Law, chapter 802, Laws of 1911. The law of 1911 was weak. The tax upon investments was permissive and not compulsory. It was a matter of common knowledge that a very large part of this kind of property went untaxed altogether. A scheme of taxation was sought that prohibited evasion of responsibility by those who chronically failed to perform their full duty as citizens and property owners.

Section 330 of the article defines the word "investments." It includes the property in question bequeathed by the will of the decedent to this corporation. Section 331 creates the tax and provides for the payment of tax on these investments. It says: "After this article takes effect, any person may take or send to the office of the comptroller of this state any investment, and may pay to the state a tax at the rate of twenty cents per year on each one hundred dollars. * * * All such investments shall thereafter be exempt from all taxation in the state or any of the municipalities or local divisions of the state."

Section 221-b in chapter 700 of the Laws of 1917 was placed in article 10 of the Tax Law, being the transfer tax act. It reads as follows: "Upon every transfer of an investment, as defined in article fifteen

of this chapter, *taxable under this article,* a tax is hereby imposed, in addition to the tax imposed by section two hundred and twenty-one-a, of five per centum of the appraised inventory value of such investment, unless the tax on such investment as prescribed by article fifteen of this chapter or the tax on a secured debt as defined by former article fifteen of this chapter shall have been paid on such investment or secured debt and stamps affixed for a period including the date of the death of the decedent or unless the personal representatives of decedent are able to prove that a personal property tax was assessed and paid on such investment or secured debt during the period it was held by decedent;    *    *    *. ''

Columbia University contends that the word '' this '' in the words '' under this article,'' refers to article 10, namely, the article in which the section is found, and by reason of the reference, it is the clear intent that the additional tax on investments should not apply to a corporation or persons who are exempted from taxation under article 10.

The state comptroller, in reply, says that '' taxable under this article '' has reference to the rates and the graduated schedules of the original Transfer Tax Law and that the only exemption of investments from the additional tax is found in section 221-b itself.

The theory of this new tax law and the purpose and the intent of the legislature was to create at the very moment the new tax became a law, a tax upon every investment so defined in the article which had not paid a locality tax. Section 337, in speaking of the application of the tax, says: '' The taxes *imposed* under this article and the revenues thereof shall be paid by the state comptroller into the state treasury.'' The word '' imposed '' means creating a charge—obligation — levy. It was the purpose of the law and the

Surrogate's Court, Westchester County, September, 1919. [Vol. 108.

intent of the legislature to provide a law so that no investment could escape taxation. If the investment was assessed locally it paid a tax and the obligation to the state to pay was satisfied. If the locality did not levy and collect the tax, the obligation to the state continued, until the owner subjected the investment to the payment of the tax, and secured the exemption or until the tax was paid upon the right to transfer the property.

It was the intent of the lawmakers to have investment securities pay a tax somewhere, in some manner and at some time. As Justice Crane stated in *Matter of Watson, infra*: " The tax on investments is not compulsory but optional." Compulsory, I take it, as to the payment, optional as to time of the payment. The option is to pay the locality, or to pay the state, or to delay and pay after death the additional percentage to the state. There was to be no avenue of escape. The tax was imposed by the law, the obligation could only be shifted in the manner indicated by the law. Whenever the security passed to any of the exempt classes, corporations, or persons, it was transferred to them subject to the obligation of the unpaid tax, plus the additional charges created by section 221-b.

If the words " taxable under this article " relate back to section 221, then the state in every case of transfer to the exempt classes of corporations or to the relatives of deceased would always fail to secure that which the law was enacted to secure, *i. e.,* tax on investment securities which had escaped in the hands of former owners.

In *Matter of Otis,* 103 Misc. Rep. 655, Surrogate Fowler said: " It seems that a person owning ' investments ' may, in either of two ways, *relieve* his estate from the additional tax provided by this sec-

tion: He may pay the twenty cents a year on each $100, as provided by section 331, or he may pay a personal property tax in the tax district where he resides. Payment in either way will relieve his estate from the additional tax provided by section 221-b."

I construe section 331 of the Investment Tax Law as having imposed an obligation to pay some tax in the alternative upon the investments of this decedent through the exercise of the taxing power of the legislature. When the decedent in his lifetime failed to take advantage of the offer of the state to pay at a reduced per centum of tax, section 221-b of article 10 automatically at the time of death increased the tax to five per centum. I hold that said property came into the hands of the trustees of Columbia University subject to the additional tax already imposed by the state upon the right to transfer.

The transfer tax is a tax upon some particular person's *right to receive* the property—the right to succession as against the state. The investment tax may well be termed a tax upon the *right to transfer* or transmit from the decedent to some person or corporation.

It is a tax on the right to transfer and is on the entire estate in so far as it consists of unstamped investments without reference to the beneficiaries. Gleason & Otis Inheritance Taxation (1st ed.), 12.

The state of Rhode Island by chapter 1339, Laws of 1916, creates this distinction, and the state of Mississippi in the present year enacted the Rhode Island law. The state of Louisiana taxes the transfer of all property of a decedent which " has not borne its just share of general taxation."

Thus the corporation became the owner of these investments subject to the tax upon the right to transfer—the obligation imposed upon this class of

property during the lifetime of the decedent through his unwillingness to pay the state his share of the burden of sustaining the government.

The transfer tax becomes a lien at the time of death. The obligation to pay the investment tax is always present during the lifetime of the owner. The act itself created the obligation. No other way to create it is provided. The theory of the investment tax is new and novel and constitutional. In the *Watson Case, infra,* the Court of Appeals held the Investment Tax Law constitutional and not unduly depriving local assessors of property which should contribute to the support of local government. The act withdraws a large amount of personal property from local taxation and reduces the field of the local assessors. Because only a part of the property locally assessed is withdrawn by the act may very well have been the basis for sustaining it. Whether the state could withdraw all property from local assessment for local taxation is a more serious problem.

This law has in it at least an effort for the equalization of taxation and the adjustment of the burden of government. The transfer tax and the investment tax laws are separate and distinct and governed by entirely different principles. The legislature's purpose must be gathered from the reasons for the new system of taxation—the method to reach property which heretofore had escaped taxation.

The Court of Appeals undoubtedly had in mind the reasons for the passage of the Investment Tax Law as herein stated, when Justice Crane writing recently for that court, upon the Investment Tax Law, said, in *Matter of Watson,* 226 N. Y. 384, what decided the instant case: " Illustrations of how this tax may work inequitably, if the exemptions are allowed to certain relatives under section 221, have been con-

Misc.] Surrogate's Court, Westchester County, September, 1919.

ceived by the courts below. Sufficient to say that in our judgment, the exemptions do not apply to section 221-b. It is a flat tax of five per cent upon the transfer of property not theretofore taxed as specified. Reference to the investments *taxable under this article* means the investment securities specified by article XV passing by inheritance and taxed as stated in article X. The exemptions are classified by section 221, as exceptions and limitations and are not continued to cover the additional tax.''

The contention of the learned counsel for the state comptroller is sound and that portion of the estate of the decedent falling within the definition of '' investments '' under the Investment Tax Law which was not assessed by the local authorities or was over and above the amount assessed and which did not pay any tax to the state, is subject to the tax of five per centum, and must be assessed under section 221-b of the Tax Law.

As to the other question submitted. Certain Virginia debt certificates passed under the will of the decedent to Columbia University.

It appears that when West Virginia seceded from the commonwealth of Virginia, the state of Virginia issued certain debt certificates against their claim that West Virginia should pay its proportionate share of the original debt of Virginia. The form of the certificate issued has been presented, and, in my opinion, it does not purport to be an obligation either of the commonwealth of Virginia or of the state of West Virginia, but only states that the holder thereof shall be entitled to payment in the event of a settlement to be made hereafter between the states of Virginia and West Virginia, in regard to the public debt of the state of Virginia existing at the time of its dismemberment. It is more in the nature of a lottery ticket. It

was not subject to the personal property tax, or to the stamp tax during the lifetime of the decedent and therefore ought not to be taxed under section 221-b.

Decreed accordingly.