In the Matter of the Transfer Tax upon the Estate of LEOPOLD BEYER, Deceased.

EMMA BEYER, Appellant; EUGENE M. TRAVIS, Comptroller of the State of New York, Respondent.

First Department, February 6, 1920.

**Tax — transfer tax — transfer not made in contemplation of death.**

A decedent about three months prior to his death, without knowledge of the nature of his illness or that it was necessarily fatal, transferred to his daughter, who had taken care of him and his wife for several years, some shares of stock representing only a small portion of his estate.  On all the evidence,

*Held*, that said transfer was not made in contemplation of death and hence is not subject to a transfer tax.

APPEAL by Emma Beyer from an order of the Surrogate's Court of the county of New York, entered in the office of the clerk of said court on the 23d day of June, 1919, affirming an order fixing and assessing the tax upon the transfer of the property of the decedent under the law in relation to taxable transfers of property.

*Sydney G. Soons* of counsel [*Charles E. Hotchkiss* with him on the brief; *Davies, Auerbach & Cornell*, attorneys], for the appellant.

*Schuyler C. Carlton* of counsel [*Lafayette B. Gleason*, attorney], for the respondent.

SMITH, J.:

Leopold Beyer died on September 16, 1918.  He left an estate valued at about $230,000.  At the time of his death he was the owner of 1,000 shares of stock and $14,000 face value of the bonds of the Consolidated Gas Company.  He left a son to whom he gave some property, and the wife of that son to whom he gave more property at his death, and a grandson, in addition to Elizabeth Beyer, his wife, to whom he gave a life estate in about $150,000, and Emma Beyer a daughter, who had a remainder life estate after the death of his wife.

Emma Beyer was, at the time of these proceedings, about

forty-seven years of age, and for four years prior to his death had taken care of the decedent, and of her mother, who was an invalid.   Upon June 4, 1918, he gave to this daughter 200 shares of this stock, amounting in value to about $17,000.   This was about four months prior to his death.   The transfer tax appraiser has held that this was given in contemplation of his death and the transfer was subject to a tax.   This holding has been sustained by the surrogate and it is from this order that this appeal has been taken by Emma Beyer.

It seems that for about eighteen months prior to the decedent's death he was afflicted with throat trouble. Undoubtedly he had a cancer of the throat.   He went to many doctors and insisted that the doctors did not know their business.   The only witness sworn upon the question of the decedent's disease and his knowledge thereof, was Emma Beyer, herself, who swears that her father, prior to his death, did not know the nature of his illness or that it was necessarily fatal. She also swears that he had several times asked her what she thought was the matter with him and that her reply would be that she thought he was getting better.   The surrogate has found from the nature of the disease and in contradiction of the testimony of Emma Beyer that the decedent did have knowledge of the nature of his malady and knew that he could not live long, and found that this transfer was in contemplation of death.   Upon June fourth, when the deceased gave this stock to Emma Beyer, he told her that it was compensation to her for taking care of himself and his wife for these years, and told her further, that when he got better he would give her more.   During his sickness he was scarcely ever confined to his bed.   He had trouble with his throat and it made speech difficult.   He was up and around, however, at all times except that he would occasionally lie down for a couple of hours or more, within a short time of his death.   Upon the day of the gift he walked down to the Mercantile Safe Deposit Company where he kept his safe deposit box, with Emma Beyer herself, got this stock out of his box and took it up to the Columbia Trust Company, and there he gave it to a clerk with directions that it should be transferred to the name of his daughter.   The question, as before stated, is whether this transfer was made in contemplation of death.

In *Matter of Kean* (108 Misc. Rep. 538) the court said: "The special tax laws relating to the taking of property for the support of Government are always construed strictly against the Government (*Matter of Wadsworth,* 100 Misc. Rep. 439), and the State has the burden of proving that property is subject to a tax. (*Matter of Enston,* 113 N. Y. 174.)"

In *Matter of Thorne* (44 App. Div. 8) the court said: "The right to impose the tax must rest upon evidence sufficient in probative force to bring it within the statute, and must establish a case from which the law clearly authorized its imposition."

In *Matter of Spaulding* (49 App. Div. 541) it is held that a transfer to be declared to have been made in contemplation of death must have been made with intent to evade the Transfer Tax Law. This case was affirmed in 163 New York, 607.

In *Matter of Mahlstedt* (67 App. Div. 176) the president of a corporation being ill and being told that he must take a long vacation, transferred his stock in a corporation, save one share, to his wife, that she might take over the management of the corporation. The same day he executed a will making his wife the sole beneficiary. He died three weeks later. It was held that the transfer was not made in contemplation of death.

In *Matter of Baker* (83 App. Div. 533) it is said: "Neither, in our opinion, does it subject the debt to taxation under the act in question, unless it can be shown that the agreement was entered into in bad faith and with some evasive intent." This was affirmed in 178 New York, 575, upon the opinion from which the quotation is made.

In *Matter of Hendricks* (163 App. Div. 413) there was a transfer of stock by the decedent to his wife which she immediately handed back to him and which was returned to the safe deposit box, but no record was made upon the books of the corporation until after the testator's death, and he, up to the time of his death, collected the dividends and deposited the same to his credit, in an account from which his wife also had the right to withdraw funds, and it was held that there was a valid gift *inter vivos* and that the transfer was not made in contemplation of death.

The case of *Matter of Fitzgibbon* (106 Misc. Rep. 130),

cited by the respondent, was where the deceased, within two months of his death, transferred all his real property to his daughters. The value of this real property was upwards of $73,000. He afterwards died, leaving an estate of $1,254. There was no claim of any consideration for this transfer and as to part of the property the decedent reserved to himself the right to collect and retain for his own use and benefit the rents during his life. This transfer was held to be made in contemplation of death.

In *Matter of Keeney* (194 N. Y. 281) a transfer was held to be made in contemplation of death where the decedent reserved the life estate to himself.

In the case at bar this transfer was made in recognition of the moral, if not legal, obligation resting upon him to compensate his daughter for four years of faithful service in caring for himself, an invalid, and also his wife, who was an invalid. This testator had in 1905 given to this same daughter 100 shares of this same stock and had given other property to his son. Whether or not the daughter had legal claim for reimbursement for caring for the deceased and his wife during those four years is not material. The decedent had a clear right to recognize a moral, as well as a legal obligation and make payment thereof. That he did not expect to die shortly is shown by his statement to her that later he would give her more. Moreover, if this transfer had been made for the purpose of avoiding the payment of the transfer tax it would seem as though he would have made a transfer of a larger amount of stock either to her or to those who were to be beneficiaries under the will. The stock given was of the value only of $17,000. His estate, at his death, was valued at $230,000, so that this was only a small percentage of the property which he was to leave and which in any event would be subject to the transfer tax. There is nothing in the case except the mere fact that this man was sick of an incurable disease to indicate that the transfer was made in bad faith or with some evasive intent. The contrary is to my mind clearly evidenced by all the facts in the case and we are of opinion that the determination of the learned surrogate that this transfer was made in contemplation of death is not borne out by the evidence.

The order appealed from must be reversed, with costs to appellant both upon the law and facts and the transfer be held not taxable under the provisions of the Transfer Tax Law, and the matter remitted to the Surrogate's Court for further action in accordance with this opinion.

CLARKE, P. J., DOWLING, PAGE and PHILBIN, JJ., concur.

Order reversed, with costs to appellant, and the matter remitted to the Surrogate's Court for further action in accordance with opinion. Settle order on notice.