Court of Common Pleas of Hancock County.

IN THE MATTER OF THE ESTATE OF ELIZABETH W. DONNELL, DECEASED.*

Decided April Term, 1928.

---

* Affirmed by the Court of Appeals of Hancock county without report. Motion to certify record overruled by the Supreme Court, June 19, 1929.

*Merle N. Poe,* and *Ed. V. Bope,* for Otto D. Donnell.
*W. H. Middleton, Jr.,* for the Tax Commission.

DUNCAN, J.

This case is here on appeal from the Probate Court. The controversy concerns the decedent's disposal of part of the property received as her distributive share of her husband's estate, and the question is whether the same is subject to the state inheritance tax under the circumstances in relation thereto.

James C. Donnell, resident of Findlay, died testate on the 10th day of January 1927 leaving the said Elizabeth W. Donnell, his widow, 72 years of age, Otto D. Donnell, a son by a former marriage, 44 and three grandchildren, sons of Otto, James 17, John 14, and Dewey 11. Mr. Donnell left an estate approximating the value of $6,000,000, and the inheritance tax on the full value thereof has been paid.

The evidence shows that he was a strong and positive character, determined and dominant with his associates in business and in his family, and because of his unusual business capacity and consequent financial success, enjoyed the distinction of always having his own way. His will gave the widow a life estate in their home with a provision of $500 per month for her support, and the balance of his estate was left in trust for Otto and his three sons to be divided equally among them when the youngest should reach his majority. But Mrs. Donnell elected not to take under the will, thus making her distributive share in the estate $1,582,040. Of this, she afterwards transferred $1,082,040 to the son Otto.

It was her desire to maintain the home with the same style and dignity as theretofore, and this was also the wish of the son and the grandsons. But upon a consultation with Mr. Fleming, Mr. Donnell's private secretary, who had been paying all the bills, she found that this could not

be done from the provision made for her in the will. There was that same feeling and bond of affection between her and Otto as usually exists between a mother and her own son. She complained that Mr. Donnell was not fair in his will either to her or to Otto. That there should have been a different provision for each of them. That Otto needed more money. That she wanted $500,000 and that she would like to put Otto in the shape his father should have provided for him. She wanted to do for him what his father had failed to do. This is one of the reasons, as stated by one of the witnesses, she transferred this $1,082,040 over to him.

She suggested the arrangement whereby she would retain the $500,000 and have Otto take the rest. That Otto was not well, she said, has a heavy expense and a large family to support and a home to keep up. That Otto is more liberal than his father was, that he was doing a lot of good in the world and had use for more money than he had control of and that she wanted to have him take the balance of her distributive share. She requested Mr. Bope to consult him and ascertain whether he would do this. Thereupon Mr. Bope consulted Otto and the arrangement was finally made; it was closed up on July 2. She also expressed her desire not only to have sufficient income to maintain her home, but to have enough to build a "manse," or suitable home for the pastor of the First Presbyterian Church, according to her own ideas of what was suitable for a pastor here where she was born, and to have means to travel and visit places where she had never been. She wanted to spend some time at White Sulphur Springs and possibly Washington, and then in the fall go to California for the winter. She also expressed her desire to take another trip to Europe.

The death of Mr. Donnell seemed to release her from the marital restrictions theretofore existing, her health was as good or better than it had been for ten years, and after she received this $500,000, she planned unusual pleasures and the enjoyment of life in the manner befitting her station. She never spoke of death or gave any indications

that she contemplated death or had ever heard of an inheritance tax. But rather, the evidence shows, she was contemplating life and the joy of living far beyond anything she had yet experienced. She was optimistic, believed in the doctrines of the church, was interested in its welfare and the prosperity of her city. She deprecated the fact that Mr. Donnell had failed to remember his city when making his will, their church or the local college, and it seemed her desire to make amends therefor, and she made a will for that purpose executed a couple months later.

She talked about making some alterations in her home, adding some new pieces of furniture and of redecorating some of her walls and ceilings. She was also finishing up the remodeling of the "Meeks" home (her old family home) on Hardin Street. She was planning for the future. She added much to her personal wardrobe in shopping in the big cities and was then possessed of a wardrobe adequate to meet any needs for "morning, afternoon or evening" dress; a fairly large wardrobe, larger than it had been for some time. She talked about traveling, said she did not want to spend another winter in Findlay, wanted to get into a warmer climate. She had purchased tickets for a trip to White Sulphur Springs, a part of her baggage had been packed, her reservations were made with the railroad company for her transportation and at the hotel where she expected to abide. She died the next day.

The Tax Commission claims that the gift of Mrs. Donnell to Otto having been made within the two years prior to her death, was made in contemplation of death, and is subject to the inheritance tax under the statutes of Ohio. Computation of the tax, based upon that theory, was made by the Tax Commission, and a tax of $86,661.68 was imposed. Otto took exceptions to this.

The statutes of Ohio pertinent to the issues thus tendered, are:

"Section 5332. A tax is hereby levied upon the succession to any property passing, in trust or otherwise, to or for the use of a person, institution or corporation, in the following cases:

'3. When the succession is to property from a resident, or to property within this state from a non-resident, by deed, grant, sale, assignment or gift, made without a valuable consideration substantially equivalent in money, or money's worth to the full value of such property;'

'(a) In contemplation of the death of the grantor, vendor, assignor or donor.'

"Section 5331. Subdivision 5. 'Contemplation of death' means that expectation of death which actuates the mind of a person on the execution of his will.

"Section 5332-2. Any transfer of property from a resident * * * if shown to have been made without a valuable consideration substantially equivalent in money or money's worth to the full value of such property, if so made within two years prior to the death of the transferor, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title."

What then is the meaning of this statute? It is purely a revenue law. It was enacted primarily to tax the right to inherit or take by will; to levy "upon the succession to any property passing, in trust or otherwise." *State ex rel* v. *Ferris*, 53 Ohio St., 314, 325; *Tax Commission etc.* v. *Lamprecht, Admr.*, 107 Ohio St., 535, 547. It is safeguarded by restrictions so as to include other transfers made "without a valuable consideration" "within two years prior to the death of the transferor," and made in such way as to make evasion extremely difficult. But there is no restriction on the right of any one to give his property away, provided it is not done within the two years and in contemplation of death. It is also held in *Tax Commission* v. *Parker et al*, 117 Ohio St., 215, that where the purpose of the transferor is not to distribute his estate, or any part of it, but simply to do an act of generosity or kindness, the subject of the gift is not taxable. Thus it will be seen that the statute is not absolute in the sense that it must apply to every conceivable case. In fact, the statute contemplates exceptions. It undertakes only to state the fact from which a presumption arises that the transfer was made "in contemplation of death,"—a rebutable presumption, which may be overcome by showing that the purpose did not exist.

In his opinion in the *Parker case,* Judge Robinson after quoting the statutory definition of "in contemplation of death," as "that expectation of death which actuates the mind of a person in the execution of his will," he declares: "The primary purpose of a person executing a will is to distribute his property; and it is the exception rather than the rule that minds of men are actuated to make a will because of a sense of impending death. In general, men make wills at a time when they assume additional moral obligations or additional moral obligations are thrust upon them, and the mind is actuated to make provisions by way of the distribution of property after death because of those obligations."

Speaking of the state of health and "impending death" of the donor in that case, Judge Robinson says further: "While we regard the evidence upon that subject as competent and entitled to be considered in connection with the other facts, we are of the opinion that the controlling fact in determining whether a gift is made in contemplation of death is whether the gift was in the nature of a distribution of property rather than the bestowal of a favor upon the donee." The distribution of her property did not "actuate" the mind of Mrs. Donnell. It was to do something for Otto. That was the motive.

The instant case is further distinguished from the *Parker case* in that the donee was not the donor's own child and could not take any part of the estate as an heir. That the gift here was made to right a wrong and in consideration of the present needs of the donee, and not "in contemplation of death," clearly an act of generosity and the donor's expression of appreciation of a devoted (step) son.

The gift having been made without any valuable consideration and within the two years prior to the death of the donor, the burden is thus cast upon the donee to show that it was not made in contemplation of death. But this fact is clearly shown by the evidence. Some evidence in this behalf has already been referred to. In addition, it is sufficient that the donor made no general distribution of her property, but delayed the same to a time two months

later, and that the donee here is a beneficiary under the will. That she was prompted by the best of motives in making the gift and had the best reasons in the world for making it, and that in accepting the same the donee became possessed of what in good conscience, she considered him entitled to as the son of his wealthy father. As suggested by counsel: "The will was her distribution of property when she no longer had need of it. The recipients of her bounty under it could wait until her death, but the wrong to the boy needed to be corrected now. The injustice to him consisted in postponing his enjoyment of his share of the estate. It would have been no act of generosity, no relieving of need, no particular expression of appreciation, to postpone that correction until her death, which might be after the expiration of eleven years. Clearly, we urge, the will was a distribution of property, the gift was the bestowal of a favor upon the donee."

I will now call attention to some authorities which define certain words and phrases found in this statute:

"In contemplation of death." *In re Benton,* 234 Ill., 366 (84 N. E., 1026), the court held: "A gift made in contemplation of death within the inheritance tax law, imposing a tax on property transferred by gift made in contemplation of the death of the donor, is not equivalent to a gift *causa mortis,* and a gift made when the donor is looking forward to his death as impending, and in view of that event is within the statute."

In 26 R. C. L., page 225, Section 195, it is declared that:

"The contemplation of death must be the impending motive without which the conveyance could not be made, in order to subject the transfer of property to the inheritance tax. Whether a gift is made in contemplation of death so as to be subject to the inheritance tax is a question of fact." Citing *People* v. *Burkhalter,* 247 Ill., 600 (93 N. E., 379).

*In re Byer,* 180 N. Y. Supp., 396, where a father, who left an estate of $230,000 about four months before his death, in recognition of his daughter's services to him and his invalid wife, gave her stock of the value of $17,000, it was held, reversing the decision below, that the trans-

fer was not in contemplation of death, it appearing that, although he was suffering from an incurable disease, he was not aware of its seriousness and was up and about at the time.

*In re Mahlstedt's Estate,* 73 N. Y. Supp., 818, the court held:

Taxable Transfer Law, 220, subd. 3, as amended by Laws 1897, c. 284, provides for a tax on a transfer of property made in contemplation of the grantor's death, or to take effect after death. Decedent, at the time of his last illness, owned a majority of the stock in a corporation of which he was president; and, having been told by his physician that when he recovered he would have to take a long vacation, transferred the stock to his wife, so that she might transact the business in his place. He retained one share, so as to have a right to vote at its meetings. At the same time he made a will, the wife being the sole beneficiary. The transfer was absolute on its face, and the wife immediately proceeded to take part in the company's affairs. Decedent died about three weeks later. The bookkeeper testified that decedent said he was going to assign the stock, and then he could go on a vacation. *Held,* that the transfer was not made in contemplation of death, within the statute, and was not taxable thereunder."

*In re Crary's Estate,* 64 N. Y. Supp., 566, from the opinion of the court at page 568:

"The statute was evidently intended to reach absolute transfers of property when made under a certain condition, viz., when the transferor was contemplating death; that is, the thought of death has taken so firm a hold on his mind as to control and dictate his actions regarding his property, and the business is transacted while contemplating death, and considering what conditions would arise or exist in the event of death without making the transfer, or, to be more specific, the contemplation of death is the sole motive and cause of the transfer. The transferor, realizing and contemplating that he is to die, wishing certain of his property to pass in a different manner than it would under the statute or by the terms of a will theretofore made, makes the transfer 'in contemplation of death,' and such transfer is taxable, whether made one day or one year prior to death; but, if made with other motives and for other causes, it is not taxable, no matter when made, as it cannot be presumed that the legislature

intended to place any limitation upon the inherent right of a person to give away his property whenever and to whomsoever he desires."

In re Dessert's Estate, 154 Wis., 320 (142 N. W., 647), the court held:

"A gift to an only child and her husband by a parent over 86 years of age who is in good health, and who has acquired a competency, and who desires to retire from active life, and who makes the gift because it affords him pleasure and not because he anticipates death, is not 'made in contenmplation of death' within Inheritance Tax Act (St. 1911, 1087-1), 1, imposing a transfer tax on gifts made in contemplation of death; a gift being made in contemplation of death when it is made in expectation of death as impending and in view of death."

In re Wadsworth, 190 N. Y. Supp., 819, the court held:

"In a proceeding to impose a transfer tax on bonds transferred by a husband to his wife shortly prior to his death, evidence held to show that the gift was not made to avoid the inheritance tax nor in contemplation of death."

The court say in the opinion at page 822:

"There is no reason to assume that the gift was made to avoid the inheritance tax, or in contemplation of death, except the inference indulged by appellant that because the donor died ten days after the bonds were delivered the transfer must have been in contemplation of death. That is a pure assumption. The evidence is all the other way, and I can see no good reason why several apparently respectable witnesses who testified to the facts concerning this fransfer should not be believed. If what they testify to is true, then there is no justification whatever for the assumption that the bonds were transferred either to avoid the inheritance tax or in contemplation of death. Instead of his contemplating death, Mr. Wadsworth contemplated living, and had made his plans accordingly for the following summer. Under these circumstances the transfer is not taxable."

In Commonwealth, ex rel., v. Fenley, 189 Ky., 480 (225 S. W., 154), the court held:

"Advancements made by a father to his son by con-

verting a previous indebtedness on notes into a gift by receipt reciting that the amounts were to be considered as advancements, doing so at a time when the father was in good health, in no particular peril, and without present apprehension of death, were not subject to inheritance tax as a 'gift in contemplation of death,' under Ky. Statute, Section 4281-A."

The court say in the opinion:

"The anticipation or apprehension of death in the ordinary and natural course of events is not such contemplation of death as the statute has in view. The contemplation of death the statute speaks of is a present apprehension of death arising from some existing condition or impending peril that would reasonably create a fear that death was near at hand, as for example when the grantor is in bad health and the compelling thought of death is prominent in his mind, or when he is in the presence of or there is fear or apprehension of some danger or peril that might reasonably and naturally produce an expectation of death.

"Of course, every person knows that at some time he will certainly die, and, if this ever existing knowledge of death at some time in the future was the contemplation of death within the meaning of the statute, then no person at any time during the life could make a transfer of property by deed, grant, sale or gift that would not be subject to an inheritance tax although the person making the deed, grant, sale, or gift might be in perfect health at the time the transaction took place and live for twenty or thirty or fifty years thereafter. Certainly the statute does not intend and ought not be so construed as to subject to an inheritance tax gifts or transfers of property made under circumstances such as we have supposed, and it is a matter of common knowledge that many gifts and transfers of property are made when circumstances such as these exist."

In *Spreckles* v. *The State*, 30 Cal. App., 363 (158 Pac., 549), the court held:

"Under St. 905, p. 341, Section 1, imposing a tax on transfers in contemplation of death of grantor, the words 'in contemplation of death' require that the motive for the transfer, without which it would not have been made, shall be the contemplation of death, and do not refer to mere general expectation of death entertained by all persons.

"Evidence held to show transfers of property in contro-

versy not to have been made in contemplation of grantor's death; she having been engaged in plans for future home and furnishing and care of estate at the time of the gifts."

Mrs. Spreckles had organized a corporation into which she put a large sum of money the purpose of which was to acquire, sell and deal in real estate generally, and to build and otherwise improve the same, etc., her general purpose being to employ it as an instrumentality for properly conserving, handling and managing her vast and various property interests and to transfer all said interests in the form of stock to her children. This she afterwards did, and died in less than a month. She had been ill at times, and at other times she appeared to be in the enjoyment of fairly good health. She was 79 years of age, but was making plans for the future and contemplated a trip to Europe to be there in the following June. In the consideration of this case the court among other things say in the opinion:

"First, it will be well to inquire into the legislative meaning and scope of the language 'in contemplation of death,' as that phrase is used in the statute. It certainly cannot justly be held that the purpose or the intention of the legislature was, by the law in question, to subject every transfer of property by gift to the burden of the inheritance tax. Obviously (in other words) the language referred to was not intended to include that general expectation of death which is the essential concomitant of the inherent knowledge of the inevitable termination of all life, and which is in the young and the physically robust as well as in the aged and the infirm. No similar statute has been so construed. A reasonable and just view of the law in question is that it is only where the transfer of property by gift is immediately and directly prompted by the expectation of death that the property so transferred becomes amenable to the burden; or, as counsel for the respondents with singular aptness states the proposition:

" 'It is only when contemplation of death is the motive without which the conveyance would not be made that a transfer may be subjected to the tax.' "

Holding the views here expressed the exceptions are sustained.

*Judgment accordingly.*