(No. 33036.—

THE PEOPLE *ex rel.* Cornelius P. Schoon *et al.,* Petitioners, *vs.* CHARLES F. CARPENTIER, Secretary of State, Respondent.

*Opinion filed March 17, 1954.*

ECKERT, PETERSON & LOWRY, of Chicago, (OWEN RALL, HENRY P. C. W. BARBER, and HERBERT C. LOTH, JR., of counsel,) for petitioners.

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA, GROVES, of counsel,) for respondent.

DENEEN A. WATSON, and SEYMOUR M. LEWIS, both of Chicago, *amici curiae.*

Mr. JUSTICE MAXWELL delivered the opinion of the court.

An original *mandamus* action has been instituted in this court to compel the Secretary of State to issue motor vehicle licenses to resident citizens of Illinois without payment of a 2 per cent use tax on automobiles purchased by petitioners outside of Illinois. The issue presented is the constitutionality of the recently enacted Motor Vehicle Use Tax Act, effective August 1, 1953. Ill. Rev. Stat. 1953, chap. 120, par. 453.68 *et seq.*

The act is entitled, "An Act in relation to a tax upon the privilege of the use of motor vehicles in this State." Section 1 designates the act as the Motor Vehicle Use Tax Act. Section 2 defines certain terms, the principal of which are "Use" and "Purchase price." These definitions are:

" 'Use' means the exercise by any person of any right or power over any new or used motor vehicle not previously titled in this State and not sold or transferred under any of the conditions enumerated in Section 4 of the 'Uniform Motor Vehicle Anti-Theft Act,' approved May 11, 1933, as heretofore or hereafter amended, other than such use as is incidental to the sale of motor vehicles in the ordinary course of business by a person who is licensed under the 'Retailers' Occupation Tax Act,' and other than the use of a motor vehicle by a person moving into Illinois who at the time of purchase or acquisition of such motor vehicle was a non-resident of Illinois and purchased or acquired such motor vehicle outside of Illinois and who has registered such motor vehicle in another state, and other than

the use of a motor vehicle by a person having branches of business in Illinois and other states who makes an inter-branch transfer of a motor vehicle theretofore registered in another state."

" 'Purchase price' means the aggregate value in money of anything or things, paid or delivered, or promised to be paid or delivered, by a purchaser in the consummation and complete performance of the transaction by which a motor vehicle is purchased for use in this State, without any deduction therefrom on account of the cost of the motor vehicle sold, cost of materials used, labor or service cost, interest or discount paid, or any other expense whatsoever."

The tax imposed by section 3 is at the rate of 2 per cent of the purchase price of such motor vehicle and is in addition to all other occupation or privilege taxes. Section 4 in part provides that "Every person who purchases a motor vehicle for use in this State shall, at the time of applying for registration thereof, file with the Secretary a statement concerning the purchase of such motor vehicle and shall transmit with such statement the tax imposed by this Act," and further provides that "If the Secretary finds that the purchaser has made a proper statement of purchase and has remitted the proper amount of tax therewith, he shall approve such statement and pay the tax received by him into the General Revenue Fund in the State Treasury. If the Secretary finds that the purchaser has not made a proper statement of purchase or paid the proper amount of tax, he shall refuse to file such statement of purchase, and shall notify the purchaser of his refusal."

The Secretary of State has refused to issue a certificate of title or issue license plates for any automobile purchased outside of Illinois by a resident of Illinois unless the use tax based on the full purchase price accompanies the application for title and unless the statement of purchase is filled completely and filed with the application for certificate of title. The Secretary requires payment of 2 per cent of the

full purchase price without any deduction for the value of traded-in property or for interest and finance charges; he does not require payment of the tax on motor vehicles purchased by Illinois residents in Illinois from Illinois dealers registered under the Illinois Retailers' Occupation Tax Act.

Section 4 of the Uniform Motor Vehicle Anti-Theft Act, (Ill. Rev. Stat. 1953, chap. 95½, par. 77,) (referred to in the above statutory definition of "Use,") as amended, is as follows:

"(a) The application for a certificate of title properly sworn to shall be made upon the appropriate form furnished or approved by the Secretary of State and shall contain a full description of the motor vehicle including the trade name or the name of the maker, the engine and serial numbers or the vehicle identification number in lieu of the engine and serial numbers and any distinguishing marks thereon and whether the motor vehicle is new or used, together with a statement of the applicant's title and whether possession is held by right of title, lease, conditional sale, mortgage or other agreement, and of any interest in or lien or encumbrance upon said motor vehicle and the name and address of the person holding such interest, lien or encumbrance and the name and address of the person to whom the certificate of title shall be delivered and such other information as the Secretary of State may require, and every application shall be accompanied by a fee of fifty cents, which shall be in addition to any fee charged for the registration of such motor vehicle.

"An application for a certificate of title for a new motor vehicle shall be accompanied by the certificate prescribed in Section 3c.

"An application for a certificate of title for any motor vehicle must be accompanied by proof that any tax imposed pursuant to the 'Motor Vehicle Use Tax Act,' has been paid. In the absence of such proof, no certificate of title shall be issued to such applicant.

"(b) Whenever application is made for a certificate of title for a motor vehicle for which a certificate of title has not previously been issued in this State, such application shall include a bill of sale or statement of transfer by the seller and of any lien retained by such seller. The sale or transfer of a motor vehicle for which a certificate of title has previously been issued in this State, or the sale or transfer of a new or used motor vehicle by a dealer duly registered with the Secretary of State as required by the laws of this State and duly enfranchised by a manufacturer of motor vehicles or by an authorized distributor of such manufacturer, or the sale or transfer of a used motor vehicle by a dealer duly licensed as provided in this Act, shall, in each such case, be prima facie evidence to the Secretary of State that the purchaser or transferee is the owner of such vehicle and legally entitled to make application for a certificate of title therefor; provided, that if the Secretary of State from examination of the application for a certificate of title for any such vehicle, or by other evidence available to him, is of the opinion that such applicant is not the owner of the vehicle, he shall not issue a certificate of title therefor but shall cause a thorough investigation to be made of the source and antecedents of such title and the right of such applicant to a certificate of title. Where application is made for a certificate of title for a new or used motor vehicle not previously titled in this State and not sold or transferred under any of the above enumerated conditions establishing a prima facie case of ownership in the purchaser or transferee, the Secretary of State shall not issue a certificate of title therefor, but shall cause a thorough investigation to be made of the source and antecedents of such title and the right of such applicant to a certificate of title.

"If, as a result of any investigation of title herein authorized, the Secretary of State is satisfied as to the validity of the title and ownership of the applicant and that any

tax imposed pursuant to the 'Motor Vehicle Use Tax Act' has been paid, he shall issue a certificate of title in accordance with the terms of this Act. The Secretary of State, in his discretion, may combine the application for a certificate of title with the application for the certificate of registration and with the statement of purchase required to be filed pursuant to the above cited Act."

Petitioners urge that (1) the title of the act is deceptive and in violation of section 13 of article IV of our State constitution; (2) the act is so vague as to be incomplete, as to be subject to capricious and arbitrary interpretation and application and, in violation of State and Federal constitutional requirements of separation of powers and due process; (3) the act violates the Federal constitution's interstate commerce clauses and (4) the act is not uniform as to definition of the class upon which it operates, is discriminatory and thereby violates State and Federal constitutional requirements of uniformity and due process.

It is evident from a reading of the act that the principal point is the *use* of the motor vehicle in this State. In defining that term as used in this statute recourse is had to section 4 of the Uniform Motor Vehicle Anti-Theft Act, and the *conditions enumerated* in that act. The only conditions in said section 4 which are relevant to the definition of "use" are the provisions that the sale or transfer of a new or used motor vehicle by a dealer *duly registered* with the Secretary of State, or a dealer *duly licensed* as provided by that act, shall be *prima facie* evidence that the purchaser is the owner and legally entitled to a certificate of title. By interpretation it can be deduced that a sale by a "registered" or "licensed" dealer in this State is what is meant by "conditions enumerated" in section 4. By further interpretation it can be deduced that this exclusion from the definition of "use" is intended to exclude sales by Illinois dealers on the tacit assumption that such dealers have paid the retailers' occupation tax, and on the further

assumption that such tax has been passed on to the purchaser. These are pure assumptions. The retailers' occupation tax is not mentioned in the Motor Vehicle Use Tax Act. The retailers' occupation tax is not a tax on the use or purchase of a motor vehicle; it is a tax on the privilege of engaging in the business of selling at retail. There is nothing in the Motor Vehicle Use Tax Act or in the cross reference to section 4 of the Uniform Motor Vehicle Anti-Theft Act requiring such dealers to pay the retailers' occupation tax, there is no requirement that such tax be paid by the purchaser and no reference to the fact that such tax according to custom is passed on to the purchaser or user. It is patent that the definition of "use" which excludes sales by Illinois dealers who have paid and passed on the retailers' occupation tax is neither clearly nor unequivocally expressed by the vague reference to "conditions enumerated" in section 4 of the Motor Vehicle Anti-Theft Act. Incorporation by reference of a portion of an unrelated statutory provision, which must be interpreted by an administrative official, and which requires recourse to business customs, is constitutionally vague, indefinite and uncertain.

The only basis for equality here between a purchaser from a dealer outside this State and a purchaser from a dealer within the State is the payment by the purchaser from the Illinois dealer of the retailers' occupation tax. As we have pointed out above, that payment is speculative, depends upon another unrelated and wholly independent statute not even referred to in the Motor Vehicle Use Tax Act, and even then depends upon a business custom wholly without legal sanction.

An act to be valid must not be vague, indefinite or uncertain. It must be complete when it leaves the legislature, and sufficiently explicit to advise everyone of his rights under the act. *People ex rel. Duffy* v. *Hurley*, 402 Ill. 562.

In the *Duffy case* we declared that statutes which are so incomplete, vague, indefinite and uncertain that men of

ordinary intelligence must necessarily guess at their meaning and differ as to their application have uniformly been declared unconstitutional as denying due process. It is merely a guess on the part of anyone reading the two statutes to conclude that it is required *with certainty* that the use tax be imposed on vehicles purchased outside of Illinois from unlicensed and unregistered dealers. The interpretation of the Secretary of State is therefore invalid as an unconstitutional delegation of the legislative power. To say that the conditions enumerated in section 4 of the Uniform Motor Vehicle Anti-Theft Act refer to purchase of a vehicle from a registered or licensed dealer in this State is unwarranted from the very language of the statute. It is merely speculative to interpret that there is excluded from the definition of "Use" in the Motor Vehicle Use Tax Act sales by Illinois dealers on the supposed condition that such dealers have paid the retailers' occupation tax and which tax in turn has been passed on as an economic burden to the purchaser and as part of the purchase price. In this regard it is to be noted that in neither the definition of "Use" or other provisions of the Motor Vehicle Use Tax Act nor in section 4 of the Uniform Motor Vehicle Anti-Theft Act is there any requirement that such registered dealers are obligated to pay the retailers' occupation tax.

It is contended that this tax is similar to that in the Cigarette Use Tax Act and that the act is valid as levying a complementary tax to that levied by the Retailers' Occupation Tax Act. Our decision in *Johnson* v. *Halpin,* 413 Ill. 257, is cited in support of this contention. That case can offer no such support as it is evident that there is a salient difference between the Motor Vehicle Use Tax Act and the Cigarette Use Tax Act. A review of the statutes will reveal that the former (by the Secretary's construction) provides for no general tax upon all users of motor vehicles in this State. If the Retailers' Occupation Tax Act were

476

repeated or substantially changed those who bought motor vehicles from Illinois dealers would escape the burden of this use tax. However, as pointed out in *Johnson* v. *Halpin,* 413 Ill. 257, the cigarette use tax is a tax on the local use of cigarettes and in no way discriminates against purchasers who buy their cigarettes outside of the State, since they pay the same tax as purchasers from Illinois distributors. There are no offset credit provisions for payment of the retailers' occupation tax against the payment of the use tax; there are no requirements that the former tax be paid. If an Illinois dealer fails to remit the occupation tax it will not prevent the Illinois purchaser from getting his certificate of title or license plates. These discriminatory features point up the decided lack of equality and uniformity required by both State and Federal constitutions. Other discriminatory features showing a greater tax burden on out-of-State purchases need not here be discussed in view of the manifest constitutional objections. A discussion of points urged in respect to other constitutional issues would merely serve to unduly prolong this opinion.

For the foregoing reasons the writ of *mandamus* prayed for will be duly issued.

*Writ awarded.*