(No. 34044.—

JOHN W. TURNER, JR., Appellant, *vs.* WARREN T. WRIGHT, State Treasurer, *et al.,* Appellees.

*Opinion filed March 20, 1957—Rehearing denied May 20, 1957.*

DAVIS, J., dissenting.

JEROME F. DIXON, and MICHAEL M. PHILLIPS, both of Chicago, for appellant.

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA

Groves, Mark O. Roberts, Willard Ice, Murray F. Milne, of counsel,) for appellees.

McDermott, Will & Emery, of Chicago, (George S. Stansell, Leonard S. Schmitz, and Hamilton Smith, of counsel,) for amici curiae.

Mr. Justice Schaefer delivered the opinion of the court:

The plaintiff, a resident of Illinois, bought an automobile in Indiana, brought it into Illinois and used it here. Under the terms of the Use Tax Act, (Ill. Rev. Stat. 1955, chap. 120, pars. 439.1-439.18,) a tax thereupon became due. He paid it under protest, and brought this action to secure a refund. The circuit court dismissed his complaint and he appeals.

The Use Tax Act was enacted in 1955. It imposes a tax "upon the privilege of using in this State tangible personal property purchased at retail * * * from a retailer." (Section 3.) It applies whether the property is purchased in Illinois or elsewhere. The term "use" is defined basically to mean the exercise "of any right or power over tangible personal property incident to the ownership of that property." (Section 2.) The use tax is imposed at the same rate as the tax under the Retailers' Occupation Tax Act, (Section 3; cf. Ill. Rev. Stat. 1955, chap. 120, par. 441.) It does not apply to out-of-State transactions that would not measure a tax under the Retailers' Occupation Tax Act if they occurred in Illinois, nor is it applicable to the use of property purchased outside of Illinois on which a sale or use tax has been paid to another State, to the extent of the tax so paid. (Section 3.) The tax is to be collected by the retailer, but to the extent that a retailer remits the tax imposed by the Retailers' Occupation Tax Act, he is not required to remit the tax imposed by the Use Tax Act. (Section 9.) An out-of-State retailer

may be licensed by the Department of Revenue to collect and remit the tax. (Section 6.) One who purchases from an out-of-State retailer who is not so licensed is required to pay the tax directly to the Department. (Section 10.) The act incorporates by reference many of the administrative provisions of the Retailers' Occupation Tax Act. (Section 12.)

The validity of the statute under the commerce clause of the Federal constitution is not challenged, but numerous other constitutional objections are advanced by the plaintiff and by *amici curiae* who were given permission to file a brief. The plaintiff concedes that the General Assembly has the power to pass a use tax, and directs his attack at specific provisions of the present act. *Amici curiae,* however, contend that the constitution of Illinois prohibits the passage of any general use tax. This is the most fundamental objection raised, and we consider it first.

The argument starts with the broad dictum of *Bachrach* v. *Nelson,* 349 Ill. 579, that the constitution restricts the taxing power of the General Assembly to (1) property taxes on an *ad valorem* basis, (2) occupation taxes and (3) franchise or privilege taxes. It is then pointed out that the present tax is obviously not a franchise or occupational tax, and that it cannot be sustained as a property tax because it is not levied on an *ad valorem* basis, or as a privilege tax because it does not involve conduct over which the General Assembly has "a special power of control."

The present tax purports to be a privilege tax, like the use taxes in effect in many other States. (129 A.L.R. 223; 153 A.L.R. 609.) Substantially the same argument that is made here was advanced against the Cigarette Use Tax Act in *Johnson* v. *Halpin,* 413 Ill. 257. The court there analyzed the pertinent decisions and rejected the argument, saying: "On the basis of the foregoing analysis, it is apparent that the concept of 'privilege' with reference to the taxing power has not been limited in Illinois, or in

other States, to conduct previously authorized by the legislature, or which the legislature could entirely abolish, or to benefits conferred by the State. For the right to use the streets and the highways, and the right to make *inter vivos* gifts which are effective at death, all of which have been sustained as taxable privileges in Illinois, were regarded as common rights open to all persons prior to legislative action thereon. Therefore, a taxable privilege may involve lawful rights and conduct enjoyed without previous legal authority, but over which the legislature has some power of control or classification. A tax upon such rights would be valid provided the classification were reasonable, and the statute provided for uniformity among the constituents of the class. *Harder's Storage Co.* v. *City of Chicago,* 235 Ill. 58." 413 Ill. at 270.

In the *Johnson case* the court pointed to an additional ground upon which the cigarette use tax could be sustained, saying: "Moreover, the selection of this particular privilege upon which to levy a tax is both reasonable and proper, since it is designed to complement the valid Cigarette Tax Act, and prevent the avoidance of the payment of that tax." (413 Ill. at 271.) The same considerations support the present tax.

It has been authoritatively said that "[m]any years of litigation have not resolved the uncertainties and ambiguities in the nonproperty provisions of Sections 1 and 2" of article IX of the constitution. (Cushman, Proposed Revision of Article IX, 1952 Ill. Law Forum, 226, 237.) Section 2 provides: "The specification of the objects and subjects of taxation shall not deprive the general assembly of the power to require other subjects or objects to be taxed in such manner as may be consistent with the principles of taxation fixed in this constitution." This provision of the revenue article of the constitution has received varying interpretations. See, *e.g., Illinois Central Railroad Co.* v. *County of McLean,* 17 Ill. 291; *People* v. *Worth-*

*ington,* 21 Ill. 170; *Raymond* v. *Hartford Fire Insurance Co.* 196 Ill. 329; *Harder's Fire Proof Storage and Van Co.* v. *City of Chicago,* 235 Ill. 58; *Bachrach* v. *Nelson,* 349 Ill. 579; *Reif* v. *Barrett,* 355 Ill. 104; *Johnson* v. *Halpin,* 413 Ill. 257.

But the uncertainty that has persisted as to the precise scope of section 2 of article IX need not trouble us in this case. Use taxes were developed, as the plaintiff points out, to prevent evasion of the tax that applies when retail purchases are made within the State, and to protect the local retail merchant against diversion of his business to out-of-State sellers. Those are the purposes of the present tax. Such a protective tax can depend for its justification upon the tax that it supports. The principle is not new in our law. Upon this basis completed gifts *inter vivos* that are not subject to revocation have been included in the estate of the donor for inheritance tax purposes if they were made in contemplation of death. And the statute fixes a presumption that gifts made within two years of the donor's death were made in contemplation of it. (Ill. Rev. Stat. 1955, chap. 120, par. 375.) Such a provision has been regarded as necessary to protect the base of the inheritance tax. (See *Rosenthal* v. *People,* 211 Ill. 306; *In re Estate of Benton,* 234 Ill. 366; *People* v. *Danks,* 289 Ill. 542.) A supplemental tax so levied to protect an admittedly valid tax from evasion or avoidance is clearly, in our opinion, a tax that is "consistent with the principles of taxation fixed in this constitution." We hold, therefore, that the General Assembly is not without power to enact a use tax.

While the plaintiff concedes that the constitution does not prohibit the imposition of a complementary use tax, he argues that the present statute is invalid. He points to the fact that other States that have use taxes impose them only upon the purchase of property outside the State for use within it, and he argues that the Illinois tax is not complementary because it falls upon purchases made within

the State as well as upon those made outside, and thus introduces a new tax upon domestic transactions. The act requires the Illinois retailer to collect the use tax upon the sales he makes. It does not require him to remit that tax to the State, however, to the extent that he remits the retailers' occupation tax with respect to the sale of the same property. (Section 9.) Plaintiff also contends that this setoff provision provides for a gift of public funds to private individuals, permits the commutation of taxes and provides for the cancellation of a debt due to the State, all in violation of the constitution. Const., art. IX, secs. 6 and 7; art. IV, sec. 23.

The statute provides for a use tax that falls alike on those who purchase at retail within the State and those who purchase outside of it. That tax is to be collected by the Illinois retailer, but to the extent that he remits the tax due under the Retailers' Occupation Tax Act he is not required to remit the tax due under the Use Tax Act. The tacit assumption of the statute is that by this mechanism the tax advantage that was enjoyed by the buyer who purchased outside the State will be eliminated, without increasing the burden upon the buyer who purchases within the State. The accuracy of that assumption is not challenged. The Illinois retailer is required to remit one tax of 2½ per cent with respect to each sale within the State. That is the same tax that is levied with respect to each out-of-State purchase for use within the State. It is true that the scheme of this tax is more complex than that of a use tax that falls only on out-of-State purchases. But its purpose and its results are those of the typical use tax, and the formal differences in the method by which those purposes are accomplished do not affect the validity of the statute.

It is not intended that both taxes shall reach the treasury with respect to a single transaction. It is intended and provided that one tax, and only one, shall reach the State

treasury with respect to each purchase of property for use within the State, whether or not the purchase is made within Illinois. To that end the statute provides that the use tax collected by the retailer does not constitute a debt owed by him to the State when he "is relieved of the duty of remitting such tax to the Department by virtue of his being required to pay the tax imposed by the Retailers' Occupation Tax Act upon his gross receipts from the same transaction." (Section 8.) Only if the way in which the two taxes are interrelated is ignored is it possible to say that there is here a gift of public funds, commutation of taxes, or the cancellation of a debt owing to the State. The method by which the two taxes are integrated may be cumbersome, but it is not unconstitutional.

There is, however, one respect in which the use tax does not precisely complement the retailers' occupation tax. The former tax is based upon "selling price," the latter on "gross receipts" from sales. "Selling price" is defined in both statutes to mean the consideration for a sale valued in money whether received or paid in money or otherwise, "including cash, credits, service and property of every kind or nature * * *." (Ill. Rev. Stat. 1955, chap. 120, pars. 439.2, 440.) By an amendment in 1955, however, the definition of "gross receipts" in the Retailers' Occupation Tax Act was amended so that it "means the total selling price * * *, excluding therefrom any amount allowed as credit for tangible personal property taken in trade." (Ill. Rev. Stat. 1955, chap. 120, par. 440.) The result of this discrepancy in definitions is that in cases in which property is received in trade as a part of the purchase price, the tax due may not be the same under the two statutes. For example, if a new car is purchased for $3000 and the buyer's old one is received in trade at $1000, the use tax will be $75. Under the Retailers' Occupation Tax Act, however, the value of the old car would not be included in the "gross receipts" on which the tax is computed, so

that the tax would be $50. The retailer, however, is required to remit to the Department the full $75, because he is excused from remitting the use tax that he collects only to the extent that he remits the retailer's tax with respect to the same transaction. No discrimination between purchasers is involved in this situation, because each purchaser is required to pay the same amount as every other purchaser. And there is no unjust enrichment of the retailer, for he is required to remit to the Department the full amount that he has collected. That the two taxes are not precisely identical therefore deprives no one of any constitutional rights.

The exemption provisions of the act are also attacked. The use tax falls on "the privilege of using in this State tangible personal property purchased at retail * * * from a retailer." The basic terms employed in the Use Tax Act are those used in the Retailers' Occupation Tax Act and, except in the instance just discussed, they are so defined as to make the scope of the two acts the same. In addition, section 3 of the Use Tax Act contains the following provision designed to limit the impact of the tax to those transactions that would measure a tax under the Retailers' Occupation Tax Act: "If the seller of tanglible personal property for use would not be taxable under the Retailers' Occupation Tax Act despite all elements of the sale occurring in Illinois, then the tax imposed by this Act shall not apply to the use of such tangible personal property in this State."

There are transactions that the retailers' tax does not reach, because although they involve the physical transfer of personal property at retail, the element of service is so pronounced that it has been thought to dominate the element of sale. (See, *e.g.*, *Mahon* v. *Nudelman*, 377 Ill. 331; *Huston Brothers Co.* v. *McKibbin*, 386 Ill. 479.) The use tax also exempts these transactions, and plaintiff argues that because it does so it is unconstitutional. While the

distinctions that have been drawn are admitted to be relevant to an occupation tax upon retailers, they are said to be irrelevant, and therefore arbitrary and discriminatory, when included in a tax that falls upon the privilege of using property purchased at retail.

The argument would, we think, be persuasive if the use tax stood alone, for so far as use by the purchaser is concerned there is no distinction between a tailormade suit of clothes, for example, and one purchased at retail. But the tax before us does not stand alone. It is designed to complement and to protect the tax imposed upon the occupation of selling at retail, and the validity of its exemptions is to be determined in the light of that purpose. The question here is not whether the legislature is required to shape the use tax that it imposes to conform to the tax upon retailers, but whether it may constitutionally do so. We think that it may. The purpose of the use tax is to protect the base of the retailers' tax and the classification adopted is reasonably directed to this end. Whether the General Assembly could go further and broaden the base of the use tax beyond the limits of the occupation tax upon retailers is not before us.

In addition to his general attack upon the exemption scheme of the use tax, the plaintiff also challenges one particular exemption. In 1955 the General Assembly amended the Retailers' Occupation Tax Act so that the tax would reach tangible personal property in a finished form that was transferred in connection with a sale of real estate or a building construction contract, but did not become a part of the real estate, such as bathtubs, stoves, refrigerators and the like. (Ill. Rev. Stat. 1955, chap. 120, par. 440.) To correlate the two taxes, the Use Tax Act includes a provision, in substantially the same language, bringing these same transactions within the scope of the use tax. (Section 2.) It is argued that the inclusion of this provision makes an invalid subclassification among those engaged

in service enterprises, and that this subclassification makes the statute invalid. The distinction that the provision draws appears to be, as the plaintiff says, between the sale of personal property in a finished form, as in the instances enumerated, and its sale in an unfinished form. We are unable to see wherein such a distinction is improper. In any case, so far as the use tax is concerned, this particular provision stands upon no different footing than the others that are designed to correlate the two statutes. If there is vice in the provision as it appears in the Retailers' Occupation Tax Act, the attack should be directed at that act, and not at the statute designed to complement it.

The title of the Use Tax Act is: "An Act in relation to a tax upon the privilege of using tangible personal property in this State, to make appropriations to the Department of Revenue and to the Secretary of State in connection therewith and to make certain incidental but necessary corollary changes as an enforcement aid in the Uniform Motor Vehicle Anti-Theft Act, approved May 11, 1933, as amended, by amending Section 4 of said Uniform Motor Vehicle Anti-Theft Act." It is attacked under section 13 of article IV of the constitution on the grounds (1) that it includes two subjects, (2) that its title does not express the subject matter of the act and (3) that it introduces a new subject into the Uniform Motor Vehicle Anti-Theft Act. So far as we can ascertain, the validity of a title that describes the provisions of an independent piece of legislation and also expressly amends an existing act has not been passed on by this court. The adjustments necessary to fit a new statute into the existing legislative scheme have heretofore been made by companion bills. In the only case that we are aware of that involved a statute in which a similar technique was used, (*Routt* v. *Barrett,* 396 Ill. 322,) the present question was not raised.

Section 13 of article IV provides: "No act hereafter passed shall embrace more than one subject, and that shall

be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed; and no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act." This requirement prevents logrolling, and by limiting the contents of a bill to a single subject it outlaws legislative "riders," and so protects the veto power of the Governor against encroachment. 1 Debates and Proceedings of Illinois Constitutional Convention, (1870) p. 536; *St. Louis* v. *Tiefel,* 42 Mo. 578; *Commonwealth* v. *Barnett,* 199 Pa. 161, 48 Atl. 976.

We think that it is clear that all of the provisions of the act deal with a single subject,—the imposition of a use tax,—which is clearly expressed in its title. Appropriations to enforce the act are germane to that subject. The amendment to section 4 of the Uniform Motor Vehicle Anti-Theft Act provides that the Secretary of State shall not issue a certificate of title for a motor vehicle unless the applicant furnishes a receipt showing that the use tax has been paid, or establishes that no tax is due. Such a provision is obviously relevant to the enforcement of the use tax.

But it is also argued that the Uniform Motor Vehicle Anti-Theft Act, as it stood before the amendment to section 4, dealt with a subject entirely unrelated to any tax, and that the amendment introduces into that act extraneous matter that is foreign to its title. The title of the Uniform Motor Vehicle Anti-Theft Act (Ill. Rev. Stat. 1955, chap. 95½,) is "An Act in relation to the prevention of the theft of motor vehicles by requiring certificates of title for registered motor vehicles and the licensing of dealers in used motor vehicles, trailers, semi-trailers and parts thereof." The new provision introduced by the amendment relates to the issuance of certificates of title by the Secretary

of State and so it falls within the title of the act. Evidence that the use tax has been paid or is not due will also show from whom the car was acquired and so will aid the Secretary of State in ascertaining that it was legitimately acquired. The legislative technique here used invites close scrutiny. It has an inherent potential that, if not closely confined, would trespass upon the objectives of the constitution. In this instance, however, the provision in question is germane both to the new statute and to the statute that is amended, and so it does not conflict with the constitution.

Plaintiff's remaining objections can be shortly stated and shortly disposed of. A purchaser who does not pay the tax to a retailer is required, under penalty, to file a return with the Department of Revenue. The statute does not prescribe the form of a return, and does not in so many words authorize the Department to do so, and plaintiff argues that it therefore violates the due process clause. There is little room for debate as to what is to be contained in a return under the act. The authority of the Department to administer the act is expressly stated in many of its provisions, and it is implicit throughout all of them. That authority is adequate to authorize the Department to prescribe a form of return.

Section 12 of the act incorporates, by reference to their numbers and to the subjects with which they deal, seventeen sections of another statute, but does not identify by title the statute that contains the seventeen sections. Plaintiff argues that the act is therefore fatally vague and indefinite. The argument is without merit because section 12 makes it unmistakably clear, by capsule references to the matters dealt with in the incorporated sections, that those sections are in the Retailers' Occupation Tax Act. And even without the references to specific subjects, a reading of the statute as a whole would remove any reasonable doubt.

In our opinion the circuit court properly sustained the validity of the statute, and its decree is affirmed.

*Decree affirmed.*

Mr. JUSTICE DAVIS, dissenting:

I voice my dissent to what I believe to be an unprecedented opinion by the court. My conclusion is neither predicated on the wisdom or folly of the legislation, nor on what the court describes as its "cumbersome" methods, but rather is based on the conviction that the legislature has failed to enact a valid, uniform privilege tax within the limitations of the revenue article of our constitution. Const., art. IX, secs. 1 and 2.

If I interpret the decision correctly, the court implicitly concedes that the Use Tax Act, if it stood alone, would be unconstitutional for lack of uniformity, but finds justification for this lack of uniformity in the legislature's purpose to protect the base of the retailers' tax. Indeed it appears that the court's decision is based on the assertion that "a protective tax can depend for its justification upon the tax that it supports."

I can find nothing in the revenue article nor in our decisions to indicate that a general protective purpose will render a tax immune to constitutional objections. The court points to the tax on gifts in contemplation of death as one enacted for the purpose of protecting the base of the State inheritance tax. But I know of no case, including those cited by the court, which indicates that such a protective tax could be upheld regardless of its uniformity, or without being a tax upon a privilege. Thus, the court holds that while the legislature could not constitutionally enact the present use tax standing alone, since it first enacted a valid retailers' tax, with classifications peculiar to that occupation, it may now protect that tax by enacting a use tax without regarding constitutional requirements. Under this pronouncement, if the retailers' tax were

repealed or substantially changed, those who use property in Illinois would be subjected to a clearly non-uniform and discriminatory tax. Such an objection was sufficient to strike down the Motor Vehicle Use Tax Act in *People ex rel. Schoon* v. *Carpentier,* 2 Ill.2d 468, at 475-476, where we held: "It is contended that this tax is similar to that in the Cigarette Use Tax Act and that the act is valid as levying a complementary tax to that levied by the Retailers' Occupation Tax Act. Our decision in *Johnson* v. *Halpin,* 413 Ill. 257, is cited in support of this contention. That case can offer no such support as it is evident that there is a salient difference between the Motor Vehicle Use Tax Act and the Cigarette Use Tax Act. A review of the statutes will reveal that the former (by the Secretary's construction) provides for no general tax upon all users of motor vehicles in this State. If the Retailers' Occupation Tax Act were repealed or substantially changed those who bought motor vehicles from Illinois dealers would escape the burden of this use tax. However, as pointed out in *Johnson* v. *Halpin,* 413 Ill. 257, the cigarette use tax is a tax on the local use of cigarettes and in no way discriminates against purchasers who buy their cigarettes outside of the State, since they pay the same tax as purchasers from Illinois distributors."

Nor can the court find precedent in *Johnson* v. *Halpin,* 413 Ill. 257, upholding the Cigarette Use Tax Act. In that case we pointed out that the operation of the act was uniform and nondiscriminatory among all users of cigarettes, and stated at page 270: "Therefore, a taxable privilege may involve lawful rights and conduct enjoyed without previous legal authority, but over which the legislature has some power of control or classification. A tax upon such rights would be valid provided the classification were reasonable, and the statute provided for uniformity among the constituents of the class. *Harder's Storage Co.* v. *City of Chicago,* 235 Ill. 58." We also stated at page 271:

"However, as a privilege tax it must still conform to the constitutional requirement of uniformity as to the class upon which it operates." That opinion further recited that the cigarette use tax was levied upon the privilege of using cigarettes in this State, a privilege which the State could control or abolish, and I believe that fact, as well as the complementary nature of the act, persuaded the court to sustain the constitutionality of the enactment.

Section 1 of the revenue article requires that a privilege tax must be "uniform as to the class upon which it operates." (Const., art. IX, sec. 1.) The provisions of section 2 of article IX have never been thought to eliminate this requirement. In *Ohio Oil Co.* v. *Wright,* 386 Ill. 206, 220, we stated: "We have held that these two provisions do not prevent the legislature from placing a tax on some other business or occupation than that specifically enumerated in section 1. (*Winter* v. *Barrett,* 352 Ill. 441; *Bachrach* v. *Nelson,* 349 Ill. 579; *Bessette* v. *People,* 193 Ill. 334.) However, such tax must be uniform as to the class upon which it operates, as is expressly provided by the constitution. A tax upon the occupation of producing oil is just as logical and valid a classification as is the occupation of engaging in the retail sale of tangible personal property for use or consumption, but like that tax it must operate uniformly upon a class. The designation of the persons composing a class may not be arbitrary or capricious, and uniformity may be violated by including those in fact not within the class, (*Banghart* v. *Walsh,* 339 Ill. 132; *Wedesweiler* v. *Brundage,* 297 Ill. 228; *Scully* v. *Hallihan,* 365 Ill. 185; *Svithiod Singing Club* v. *McKibbin,* 381 Ill. 194,) as well as by excluding those properly within it. *Lippman* v. *People,* 175 Ill. 101; *Winter* v. *Barrett,* 352 Ill. 441; *City of Chicago* v. *Ames,* 365 Ill. 529."

But the court has now announced that the legislature may disregard uniformity and all other constitutional limitations provided the tax has the purpose of protecting

another tax. The scope of this newly declared legislative taxing power is far beyond the constitutional proscriptions heretofore recognized.

The court announced a further dangerous doctrine in sloughing off plaintiff's objection to the subclassification of the sale of personal property in connection with sales of real estate or building contracts. It stated that "If there is vice in the provision as it appears in the Retailers' Occupation Tax Act, the attack should be directed at that act, and not at the statute designed to complement it." Thus, a taxpayer is denied the right to constitutionally attack a void requirement of a complementary act, when the principal statute contains a similar invalid provision. This is, to the best of my knowledge, the first pronouncement by this court of this novel legal principle, which I regard as violative of the constitutional rights of the plaintiff.

While sustaining the use tax because of its complementary character, the court permits that tax to actually raise the base of the retailers' tax. The retailers' tax base is on "gross receipts" which excludes credit given for property taken in trade. The use-tax base is the selling price which disregards the value of such "trade-ins." Under the court's interpretation, the use tax increases the tax on all "trade-in" transactions, while not affecting the retailers' tax on "non-trade-in" transactions. This result obtains since the retailer is excused from remitting the use tax that he collects only to the extent that he remits the retailers' tax with respect to the same transaction. Thus, retailers will be required to pay a tax based on the full value of the article sold, without excluding therefrom the value of any merchandise "traded in." The court ignores the fact that, with respect to the tax increase on these transactions, the tax is not complementary but is entirely new.

The effect of the court's decision seems to be that once a tax is enacted for the general purpose of protecting

a prior tax the subsequent tax (1) need not meet constitutional limitations, (2) cannot be constitutionally attacked if it complements similar provisions of the prior act, and (3) can go further than protection and create an entirely new tax.

While the purpose of the use tax may be desirable, it can be justified only as a tax on a privilege; and it must therefore be uniform as to the class on which it operates. I am convinced that the classifications and exemptions of the Use Tax Act do not comply with the requirement of uniformity (*City of Chicago* v. *Willett Co.* 1 Ill.2d 311; *Johnson* v. *Halpin,* 413 Ill. 257; *Winter* v. *Barrett,* 352 Ill. 441;) and that it must stand or fall on its own merits. *People ex rel. Schoon* v. *Carpentier,* 2 Ill.2d 468.

I am mindful of the limitations of our revenue article, and the ever increasing monetary needs of government, but the exigencies of the situation offer no reason for this court to approve this legislation. While, with some misgivings, I concede that this is a tax upon a privilege within the meaning of the revenue article, I must dissent from the doctrine that a complementary or protective tax is exempt from the provisions of our basic charter. The court's decision has effectively removed many of the basic constitutional limitations on the taxing power. If this is to be done, it should be by a well considered constitutional amendment and not by fiat of this court.