(No. 39667.—

INTERNATIONAL BUSINESS MACHINES CORPORATION *et al.*, Appellees, *vs.* MARSHAL KORSHAK, Director of Revenue, *et al.*, Appellants.

*Opinion filed June 16, 1966.*

596

WILLIAM G. CLARK, Attorney General, of Springfield, (RICHARD A. MICHAEL, A. ZOLA GROVES, and JOHN J. O'TOOLE, Assistant Attorneys General, of counsel,) for appellants.

ADAMS, WILLIAMSON & TURNEY, of Chicago, (JACK A. WILLIAMSON and RUSSELL J. TURNEY, of counsel,) for appellees.

MILLER AND MILLER, of Chicago, (LEON N. MILLER, of counsel,) for intervenor-appellee.

CHARLES G. CHESTER and JACOB H. MARTIN, both of Chicago, (MARTIN, CRAIG, CHESTER & SONNENSCHEIN, of counsel,) for *amici curiae*.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is an action to enjoin the Director of the Department of Revenue and other State officials from enforcing the provisions of the Leasing Occupation Tax Act, the Leasing Use Tax Act, the Municipal Leasing Occupation Tax Act and the County Leasing Occupation Tax Act. The plaintiffs are two New York corporations, International Business Machines Corporation (IBM) and Service Bureau Corporation. IBM manufactures business machines and leases them in Illinois. Service Bureau Corporation is engaged in the business of preparing accounting, statistical and

mathematical information, and leases tabulating and electronic data processing machines from IBM. Apt Service Bureau, Inc., an Illinois corporation, which also leases tabulating and electronic data processing machines from IBM, sought and was granted leave to file an intervening petition.

The defendants' motion to dismiss the complaint was overruled and when they elected to stand by their motion a decree was entered which permanently enjoined them from enforcing the statutes. The revenue and questions arising under the constitution of Illinois are involved, and the defendants have appealed directly to this court. Attorneys representing five trade associations were granted leave to file a brief *amici curiae*.

The first of several constitutional objections urged by the plaintiffs centers upon the titles of the Leasing Occupation Tax Act and the Leasing Use Tax Act. It is contended that the title of each act embraces more than one subject, and so violates section 13 of article IV of the constitution, which provides: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." The title of the Leasing Occupation Tax Act (Ill. Rev. Stat. 1965, chap. 120, pars. 453.101-453.109,) is as follows: "AN ACT in relation to a tax upon persons engaged in the business of renting or leasing tangible personal property to users and to amend Section 1 of the 'Retailers' Occupation Tax Act', approved June 28, 1933, as amended, in connection therewith." The title of the Leasing Use Tax Act (Ill. Rev. Stat. 1965, chap. 120, pars. 453.121-453.140.) is as follows: "AN ACT in relation to a tax upon the privilege of using rented or leased tangible personal property and to amend Section 2 of the 'Use Tax Act', approved July 14, 1955, as amended, in connection therewith."

Section 10 of the Leasing Occupation Tax Act amends section 1 of the Retailers' Occupation Tax Act to provide that the term "sale at retail" as used in the latter act "does not include the sale of tangible personal property to a pur-

chaser who will act as a lessor of such tangible personal property within the meaning of the 'Leasing Occupation Tax Act' and the 'Leasing Use Tax Act' ". (Ill. Rev. Stat. 1965, chap. 120, par. 440.) Section 21 of the Leasing Use Tax Act amends section 2 of the Use Tax Act to provide that the term "use" as used in the latter act "does not include the renting or leasing of tangible personal property to someone else by a person in the course of his acting as a lessor, as 'lessor' is defined in the 'Leasing Occupation Tax Act' and the 'Leasing Use Tax Act.' " Ill. Rev. Stat. 1965, chap. 120, par. 439.2.

Plaintiffs contend that each statute violates section 13 of article IV because each imposes an entirely new tax and also amends an existing taxing statute. Each of the amendments to an existing statute, however, is designed to exclude from its operation transactions that are subject to the new taxes.

In *Turner* v. *Wright,* 11 Ill.2d 161, we considered for the first time the validity of the legislative technique of including in a new taxing statute an amendment to an existing act. We there held that the provision of the Use Tax Act, which amended the Uniform Motor Vehicle Anti-Theft Act to provide that the Secretary of State should not issue a certificate of title for a motor vehicle unless the applicant furnished proof that the use tax had been paid or was not due, was "germane" and "obviously relevant to the enforcement of the use tax," and therefore did not violate the constitutional provision. We said that "it is clear that all of the provisions of the act deal with a single subject,—the imposition of a use tax,—which is clearly expressed in its title." 11 Ill.2d at 172.

In our opinion *Turner* v. *Wright* controls the disposition of the present contention. The amendments to the other taxing statutes are germane to the subjects of the acts here in question. The legislative understanding of the unity of the subject matter is unmistakably expressed. Section 9 of

the Leasing Occupation Tax Act provides: "It is the expressed intention of the General Assembly that if the tax that is imposed by this Act should be held unconstitutional, then Section 10 of this Act amending Section 1 of the Retailers' Occupation Tax Act shall be held unconstitutional, as it is not intended that Section 10 of this Act should be regarded as being severable from the rest of this Act under any circumstances." (Ill. Rev. Stat. 1965, chap. 120, par. 453.109." Section 21 of the Leasing Use Tax Act contains a similar provision. (Ill. Rev. Stat. 1965, chap. 120, par. 453.140.) The new acts and the amendments to the existing acts are plainly part of a common scheme of taxation. The veto power of the Governor is in no way threatened, and we perceive no opportunity for "log-rolling." (See 11 Ill.2d at 172.) We hold, therefore, that section 13 of article IV of the constitution has not been violated. As we said in *Turner* v. *Wright,* "The legislative technique here used invites close scrutiny. It has an inherent potential that, if not closely confined, would trespass upon the objectives of the constitution. In this instance, however, the provision in question is germane both to the new statute and to the statute that is amended, and so it does not conflict with the constitution." 11 Ill.2d 161, 173.

The next attack upon the validity of the new statutes centers upon the fact that the base upon which the two taxes are computed is not identical. The Leasing Occupation Tax Act is based upon "gross receipts", which are defined to mean "the total rental price or leasing price. Except that amounts received by the lessor which are in excess of the fair market value, which shall not be less than cost to the lessor, of the tangible personal property on the date the lease was entered into shall not be considered 'Gross Receipts' under this Act." (Ill. Rev. Stat. 1965, chap. 120, par. 453.102.) The Leasing Use Tax is based upon the "rental price" or "leasing price" which is defined as the consideration for renting or leasing tangible personal property.

It does not contain a comparable limitation based upon the fair market value of the property leased. Ill. Rev. Stat. 1965, chap. 120, par. 453.122.

Concerning the fair market value exception the Rules and Regulations of the Department of Revenue provide: "This exception applies only to a single lease whose term is long enough to bring the ceiling on the tax base that is provided for into operation and cannot be invoked and applied to a series of leases of the same item of tangible personal property. The foregoing exemption from 'Gross Receipts' applies for State and local leasing occupation tax purposes, but not for State leasing use tax purposes. Said exemption is not in the Leasing Use Tax Act and so has no effect (as far as State tax is concerned) except as to the form in which the tax is to be remitted by the lessor to the Department when rental receipts exceed the fair market value limitation referred to hereinabove. In other words, when the rental receipts exceed the fair market value of the leased property on the date when the lease was entered into, the lessor must continue to collect the leasing use tax from the lessee, but he will remit such tax to the Department as leasing use tax instead of as leasing occupation tax since he will then have no offsetting leasing occupation tax liability which would entitle him to retain the leasing use tax collected. The lessor is allowed to retain the leasing use tax collected only to the extent to which he has an offsetting leasing occupation tax liability with respect to the same rental receipts."

The plaintiffs and the *amici curiae* express somewhat divergent views as to the consequences that should flow from the discrepancy between the two statutes. The plaintiffs assert that the Leasing Use Tax Act is thereby rendered invalid because it imposes a "grossly unequal and discriminatory burden on lessee-users." It is their position that "[E]conomic equality as a policy in taxation is obviously frustrated when a compensating or complementary use tax

imposes a greater burden than that which is imposed under the occupation tax it supposedly protects." They acknowledge that any rent collected by a lessor from a lessee after the fair market value exception comes into play would be required to be remitted to the Department of Revenue. They suggest that the fair value exception should be read into the leasing use tax, citing *Union Portland Cement Co.* v. *State Tax Commission* (1947) 110 Utah, 176 P.2d 879, and *Ogden Union Railway and Depot Co.* v. *State Tax Commission* (1965) 16 Utah 2d 255, 399 P.2d 145.

The *amici curiae* assert that the inclusion of the fair market value limitation in the Leasing Occupation Tax Act and the omission of such a limitation in the Leasing Use Tax Act creates discrimination and lack of uniformity which makes both acts unconstitutional. They concede the reasonableness of the Department's regulation which requires that the fair-market-value limitation be applied to each separate lease of the same item of property, but they contend the effect of this construction is to create a lack of uniformity between lessors, with long term lessors being favored and short term lessors being discriminated against. It is also their position that under the statutes and the regulations a lessor may retain any amounts collected as use tax from his lessee after the fair-market-value limitation has been reached. Like the plaintiffs, the *amici* suggest that the fair-value exception should be read into the Leasing Use Tax Act.

We are unable to agree that the discrepancy between the two statutes creates any discrimination among lessees or among lessors. As to lessees, the leasing use tax, without the fair-market-value exception, falls equally upon all lessees. No lessee is treated differently from any other lessee. Indeed, to import a subclassification among lessees into the leasing use tax might create problems of potential discrimination which have been avoided by its omission. In the case of successive leases of the same item of tangible personal

property, for example, the lessee under a lease executed after the lessor has already received an amount equal to the fair market value of the property would pay no leasing use tax, and it would then be necessary to justify the different treatment accorded him. We need not, at this time, pursue further possible ramifications.

The arguments of the *amici* that the statutory scheme enacted by the General Assembly discriminates among lessors rest ultimately upon what we believe to be an erroneous construction of the statutes. Section 8 of the Leasing Use Tax Act provides: "The tax herein required to be collected by any lessor pursuant to this Act, and any such tax collected by any lessor shall constitute a debt owed by the lessor to this State, except when such lessor is relieved of the duty of remitting such tax to the Department by virtue of his being required to pay the tax imposed by the 'Leasing Occupation Tax Act' upon his gross receipts from the same transaction." The *amici* contend that this provision "permits the lessor who collects use tax from his lessee to keep as his own property the difference between the use tax collected and the amount owed to the State by the lessor as leasing occupation tax." We think it clear, however, that section 8 was not designed to create windfalls, but to prevent them. The *amici's* contention overlooks the fact that the lessor is relieved of his duty of remitting the leasing use tax which he is required to collect from his lessee only to the extent that he is required to pay leasing occupation tax upon the rent that he receives. In this respect we believe that the regulation of the Department accurately expresses the legislative purpose: "In other words, when the rental receipts exceed the fair market value of the leased property on the date when the lease was entered into, the lessor must continue to collect the leasing tax from the lessee, but he will remit such tax to the Department as leasing use tax instead of as leasing occupation tax since he will then have no offsetting leasing occupation tax liability which would

entitle him to retain the leasing use tax collected * * * only to the extent to which he has an offsetting leasing occupation tax liability with respect to the same rental receipts * * *."

A lessee under a long term lease continues to pay leasing use tax after his rental payments have equaled the fair market value of the leased item. And the lessor continues to remit the tax he collects from the lessee after he has received rental payments equal to the fair market value of the leased item. In this there is no discrimination among lessors or among lessees. If there is any discrimination it is between a seller and a purchaser on the one hand, and a lessor and a lessee on the other. But it is not suggested that the constitution requires that the economic consequences of a tax upon the privilege of selling personal property must be identical with those of a tax upon the privilege of leasing personal property, or that identical economic consequences must flow from taxes imposed upon the privilege of using tangible personal property which is owned and the privilege of using that which is leased. We are aware of no such requirements.

The situation in this case closely resembles that presented in *Turner* v. *Wright*, 11 Ill.2d 161. There we considered the effect of a difference in the definitions of "gross receipts" in the Retailers' Occupation Tax Act and in the Use Tax Act. We said: "The result of this discrepancy in definitions is that in cases in which property is received in trade as a part of the purchase price, the tax due may not be the same under the two statutes. For example, if a new car is purchased for $3000 and the buyer's old one is received in trade at $1000, the use tax will be $75. Under the Retailers' Occupation Tax Act, however, the value of the old car would not be included in the 'gross receipts' on which the tax is computed, so that the tax would be $50. The retailer, however, is required to remit to the Department the full $75, because he is excused from remitting the use tax

that he collects only to the extent that he remits the retailer's tax with respect to the same transaction. No discrimination between purchasers is involved in this situation, because each purchaser is required to pay the same amount as every other purchaser. And there is no unjust enrichment of the retailer, for he is required to remit to the Department the full amount that he has collected. That the two taxes are not precisely identical therefore deprives no one of any constitutional rights." 11 Ill.2d at 168-9.

Plaintiffs challenge the exemption in both acts for "the renting or leasing of real property (such as a building or room in a building or apartment) even though the rental or leasing charge includes the right to use some personal property (such as furniture and furnishings) in connection with the use of such real property." (Ill. Rev. Stat. 1965, chap. 120, pars. 453.102, 453.122.) They contend that under this provision "the lessor of real estate may lease any kind or amount of tangible personal property from others in order to sublease it for use by his real estate lessee, and so long as the rent he charges his lessee for such property is included in the real estate rental, no L.O.T. liability is incurred with respect to any of the transactions involved." But we think that the provision is a reasonable recognition of the differences between the two kinds of leases, and of the difficulties of allocating value in real estate leases between personal property on the one hand and fixtures and other real property on the other. The central perception of the exemption—furnishings in connection with the lease of a room or building—is adapted to that end.

Both acts provide that: "Renting or leasing does not include the making of a charge, by a dealer in the kind of property that is involved, for the use of an item of such property as a demonstrator in connection with the dealer's business of selling, where the charge is merely made to recover the costs of operating the item as a demonstrator and is not intended as a rental or leasing charge in the ordinary

sense." Ill. Rev. Stat. 1965, chap. 120, pars. 453.102; 453.122.

Plaintiffs contend that this provision "is a patently unfair discrimination against lessors who are not dealers in the property they lease." We are unable to accept that view. The provision is limited to charges made to cover only the costs of operation as a demonstrator, which are not intended as ordinary rental charges. On its face, the exception appears to relate only to transactions that would not ordinarily be considered within the scope of an act "in relation to a tax upon persons engaged in the business of renting or leasing tangible personal property to users." Like the exemption for leases of real property, this one is to some extent surplusage; it excludes what would in all likelihood be held outside the scope of the act anyway. *Cf. Illinois Road Equipment Co. v. Department of Revenue,* 32 Ill.2d 576.)

The exemptions of leased property "where such property is moved by an interstate carrier for hire as rolling stock moving in interstate commerce", (Ill. Rev. Stat. 1965, chap. 120, pars. 453.103, 453.123) are challenged on the ground that they discriminate "against persons who operate, as lessees, rolling stock moving in interstate commerce, but who are not carriers for hire," and also on the ground that they discriminate against carriers for hire who are engaged in intrastate commerce. The objective of the provision seems to be to avoid conflict with the commerce clause of the constitution of the United States. (*Cf.* Ill. Rev. Stat. 1965, chap. 120, par. 441.) The argument against its validity is that it does not precisely achieve that objective, and that to the extent that it fails it results in a lack of uniformity. Neither in the complaint, nor in the intervening petition which Apt Service Bureau, Inc. was granted leave to file, is it alleged that plaintiffs or Apt Service Bureau, Inc. were engaged in using rolling stock in any way. Thus they do not, with respect to this exemption, bring themselves within the class of persons allegedly discriminated against.

That the statutes would stand regardless of the invalidity of this exemption is clear. Section 9 of the Leasing Occupation Tax Act and section 20 of the Leasing Use Tax Act both provide, with specified exceptions, that "if any clause, sentence, Section, provision or part of this Act or the application thereof to any person or circumstance shall be adjudged to be unconstitutional, the remainder of this Act or its application to persons or circumstances other than those to which it is held invalid shall not be affected thereby." (Ill. Rev. Stat. 1965, chap. 120, pars. 453.109, 453.140.) The provision in question is not vital to the general scheme of the tax, and we cannot say that "the legislature would not have passed the statute with the invalid portion eliminated." (*People ex rel. Holland Coal Co.* v. *Isaacs,* 22 Ill.2d 477, 484.) If this exemption is invalid, a matter that we do not decide, its invalidity does not adversely affect any party to this case.

Apt Service Bureau, Inc., also attacks the following provision which occurs in both statutes: "Renting and leasing also does not include the making of a charge for the use of tangible personal property where the lessor, either himself or through an agent, furnishes the service of operating the property so that the lessor remains in possession of the property because this does not constitute a transfer of possession or right to possession of the property." (Ill. Rev. Stat. 1965, chap. 120, pars. 453.102, 453.122.) The contention is that these provisions exempt the lessor of a car who provides a chauffeur, even though "that driver is under the control and direction of the lessee at all times." But the statutes do not contemplate such a result. The exemption is conditioned upon the lessor remaining "in possession of the property" under ordinary principles. Therefore intervenor's hypothetical argument is not relevant.

Apt Service Bureau, Inc., also challenges the exemption of "any person engaged in a public utility business with respect to any transaction that is subject to tax under The

Messages Tax Act, The Public Utilities Revenue Act or The Gas Revenue Tax Act." The argument is that this exemption discriminates in favor of lessees from utilities over lessees of similar items from others. But this is clearly a misconstruction of the scope of the exemption, which applies only to transactions "subject to tax" under other statutes. The plain purpose is to avoid discriminatory double-taxation with respect to utilities which are subject to taxes not generally applicable.

Apt Service Bureau, Inc., also attacks the refund procedure in the leasing occupation and leasing use tax acts on the ground that the lessee, who bears the practical burden of the tax, has no direct remedy under the statute, but must rely on the lessor to seek any refunds due, unless the lessee actually remitted the tax. The scheme for recovery of refunds is essentially the same under these statutes as that provided under the Retailers' Occupation Tax Act, and the Use Tax Act. We described the operation of this procedure in *Snyderman* v. *Isaacs,* 31 Ill.2d 192, 196, 195-96, and said: "In these provisions there is recognition of the possibility that the state may be unjustly enriched through the retention of taxes erroneously paid, and a remedy has been provided. There is recognition also that a refund procedure without safeguards might result in refunds of taxes that had not actually been remitted, or in the unjust enrichment of persons who had not themselves paid the tax, but had passed its burden on to another. To protect the real taxpayer and to prevent unjust enrichment of any other party, the legislature has provided both in the Use Tax Act and in the Retailers' Occupation Tax Act that the only person entitled to receive credit is the remitter of the tax. And it has also required that where the remitter has not himself borne the burden of the tax, he must directly or indirectly reimburse the actual taxpayer before filing his claim with the Department. Ill. Rev. Stat. 1961, chap. 120, pars. 439.19, 445." In

our opinion the refund procedure established by the statutes deprives no one of constitutional rights.

Plaintiffs argue that the definition of "rental price or leasing price" is so vague and contradictory that it renders the statutes invalid. The statutes define "rental price" or "leasing price" to mean "the consideration for renting or leasing tangible personal property," to be determined "without any deduction on account of the cost of the property rented or leased, the cost of materials used, labor or service cost or any other expense whatsoever * * *. The phrase 'rental price' or 'leasing price' does not include * * * a separately stated charge for insurance or license plate fees or other separately stated charges which are not for the use of tangible personal property." (Ill. Rev. Stat. 1965, chap. 120, pars. 453.102, 453.122.) Plaintiffs contend that the second sentence conflicts with and confuses the first.

Attached to the complaint in this case was a form of "Agreement for IBM Machine Service" under the terms of which IBM agrees to furnish "its IBM machine service comprising the use of the below listed machines * * * and machine maintenance service." A single charge, called a "monthly availability charge", apparently includes both the charge for the use of the machines and the charge for their maintenance. The parties have stipulated that the Department of Revenue was requested to allow a percentage deduction from IBM's monthly charge to be attributed to "maintenance service", but refused to do so on the ground that "this is a mandatory maintenance provision."

The Department's position was apparently based on its interpretation of the words "service cost" to mean that "the cost of the goods leased, including service *required under the lease* are not to constitute exemptions from the tax." (Emphasis supplied.) We do not so read the language of the statute. The entire clause in which the words "service cost" are used is apparently intended to require that the

rental price be determined without deduction on account of costs to the lessor in making the leased article available to the lessee—whether those costs are made up of the cost of the leased article itself, or of services, labor, or materials. We are aware of nothing in the statute that would prevent a lessor from requiring that his lessee maintain the leased article in satisfactory condition. Nor does the statute prohibit a lessor who desires to assure himself that the leased article is properly maintained from providing in the lease that he shall himself furnish whatever maintenance service is necessary. We see no basis in the statute for a distinction between charges for maintenance service "required under the lease" and other charges for maintenance service. On the other hand, reasonable charges for maintenance services, whether rendered by the lessor or by someone else, are not charges made "for the use of tangible personal property" within the meaning of the statute. In our opinion, therefore, charges for maintenance services which are separately stated are not to be included in the rental price, whether or not they are required under the terms of the lease.

Finally, the *amici* contend that the provisions of both statutes which incorporate by reference certain sections of the Retailers' Occupation Tax Act violate section 13 of article IV of the constitution which provides that "no law shall be revised or amended by reference to its title only, but the law revised, or the section amended, shall be inserted at length in the new act." This constitutional provision does not prohibit incorporation by reference. This court has often approved the "familiar legislative process of adopting certain portions of another statute by reference," where the original statute itself was in no way altered, but some of its provisions were adopted for use in another bill. (*People ex rel. Caut v. Crossley,* 261 Ill. 78, 85; *Zurich General Accident and Liability Ins. Co. v. Industrial Comm.* 331 Ill. 576, 580-581.) "It is permissible to incorporate by reference into a new act provisions of other

acts which are germane to the subject expressed in the title of the new act, (*Hagler* v. *Small*, 307 Ill. 460; *Evans* v. *Illinois Surety Co.* 298 id. 101; *People* v. *Crossley*, 261 id. 78;) but matter cannot be included in the act by reference which could not have been included directly." *Chicago Motor Club* v. *Kinney*, 329 Ill. 120, 130.

The vice to which the constitutional provision is directed is exemplified by the *Chicago Motor Club* case. There, the Motor Fuel Tax Act directed certain funds to be used in a way which an earlier statute prohibited. "Under the Motor Vehicle act the disbursing officers of the State are told to use all of the Road fund for the construction and improvement of the highways of the State, whereas under the Motor Fuel Tax act they are authorized to use the same fund for other purposes. Such officers cannot determine their duties in this respect by reading either act alone. The provisions of the two acts are intermingled and the officers must take both as their guide." 329 Ill. at 127. See also *DeMotte* v. *DeMotte*, 364 Ill. 421.

Those provisions of the Leasing Use Tax Act which incorporate by reference provisions of the Retailers' Occupation Tax Act do not in any way amend the latter act. Several of its provisions are incorporated into the Leasing Use Tax Act, with some alterations in the application of the incorporated provisions to the new act. These alterations conform appropriate terms to the new act, and change minor substantive provisions. There is no vagueness or ambiguity created in the interpretation of either statute. (*Cf. People ex rel. Schoon* v. *Carpentier*, 2 Ill.2d 468.) The constitutional provision is not violated simply because the incorporated provisions are slightly altered as applied to the new statute, or are only incorporated "as far as practicable" or to the extent they are "not inconsistent with" the new statute. (*Evans* v. *Illinois Surety Co.* 298 Ill. 101.) Nor does the fact that certain of the incorporated provisions elaborate on or duplicate certain provisions in the new statute render

612

the incorporation void, as long as no undue vagueness results. *Cf. People ex rel. Schoon v. Carpentier*, 2 Ill.2d 468.

*Amici* further contend that the incorporation by reference is defective because not all terms borrowed from the Retailers' Occupation Tax Act are translated for use in the leasing tax acts. We have examined the acts and can find nothing which would render them unconstitutionally vague. Sufficient terms are translated to give substantial meaning to all of the incorporated provisions.

The judgment of the circuit court is reversed.

*Judgment reversed.*